Edna G. HOLLANDER, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 11464.

United States Court of Appeals,
Third Circuit.

Argued Jan. 18, 1955.
Decided Feb. 14, 1955.

Thomas J. McManus, Pittsburgh, Pa., (Robert F. Banks, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief), for petitioner.

Dudley J. Godfrey, Jr., Washington, D. C., (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Lee A. Jackson, Stanley P. Wagman, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The problem in this tax case is whether under the particular facts the cost

**4.** W. E. Hedger Transportation Co. v. Ira S. Bushey & Sons, 2 Cir., 186 F.2d 236; Colonial Airlines Inc., v. Janas, 2 Cir., 202 F.2d 914, 918.

of an inclinator should be considered a medical expense within Section 23(x) of the Internal Revenue Code of 1939.[1]

The apparatus, also called a stair-seat elevator, is a strongly constructed collapsible chair propelled by an electrically driven cable along a channelled steel rail attached to the wall side of stairs in taxpayer's home. Its purpose is to transport taxpayer up and down stairs.

The critical tax year is 1948. On November 24, 1947 petitioner, then sixty-four, suffered an attack of coronary thrombosis with definite damage to the anterior artery. She was hospitalized the same day and so confined until January 15, 1948 when she was removed to her home. During the early part of 1948 she had marked insomnia and anxiety neurosis coupled with depression. She had no bedroom or bath on the first floor of her home. Her physician, Dr. Lawrence Wechsler, who had treated her since 1937, prescribed for her a complete slow down program. He does not pretend in his testimony that this could or would cure thrombosis but he does say regarding the effect of such treatment upon people so afflicted that "They can live their life for many, many years, but they must live it on a lower plane. Whether they eat or drink or walk, you see, they must, as I say, live their life on a lower plane." As part of this method of keeping her alive he did not wish her to climb stairs and tried to persuade her to move to a one floor dwelling. Petitioner, living alone and attached to her home, refused. The doctor then advised her to have a stair elevator installed, not as a cure for the condition but to avoid another acute attack by preventing her from running up and down stairs. Parenthetically it is pleasing to note that Dr. Wechsler's program would seem to have been successful to date.

■ Whether a particular expenditure qualifies as a medical expense de-

pends upon "the present existence or the imminent probability of * * * illness" and proof that such expenditure was *"incurred primarily for the prevention or mitigation of the particular * * * illness."* Stringham v. Commissioner, 1949, 12 T.C. 580, 584, affirmed 6 Cir., 1950, 183 F.2d 579. See Havey v. Commissioner, 1949, 12 T.C. 409. This inclinator was installed solely to alleviate the thrombosis condition. With neither bathroom nor bedroom on the first floor of the Hollander home and with this elderly woman living alone, the necessity of her going from one floor to the other is apparent. The use, therefore, of the inclinator had a directly beneficial effect with respect to both present mitigation of taxpayer's serious illness and future avoidance of a crisis provoking source with respect to it. It has helped importantly to enable her to live with less physical effort; as her doctor described it, "on a lower plane". In caring for herself she was forced to move about her house. By means of the stair elevator she has been saved from a very real source of strain on her heart which could and probably would have caused a recurrence of the acute stage of the disease. Dr. Wechsler by his slowing down treatment was striving to prevent that perhaps fatal consequence. Under such circumstances the Commissioner's argument that the inclinator was not "proximately related" to the imminent recurrence of petitioner's thrombosis has no merit whatsoever. The argument, if it ever had any weight, now flies in the face of the Tax Court's specific finding of fact that Dr. Wechsler's purpose in having petitioner obtain the inclinator "was to prevent her from doing any further damage to her heart."

As we understand it, the Tax Court's position, unlike that of the Commissioner,[2] is that regardless of the circum-

---

1. Now incorporated in Section 213 of the Internal Revenue Code of 1954, 26 U.S.C.

2. The Commissioner considers the ultimate characterization of a nondeductible item under Sec. 24(a) (1) or 24(a) (2), 1954

stances the cost of an inclinator cannot be a medical expense because an inclinator is by its inherent nature a capital item. We now address ourselves to that proposition.

The Tax Court, inferentially at least, seems to agree that the contraption involved adds nothing to the value of the house. Aside from its appearance it clutters up the stairs to a considerable degree. From the photograph of it, Exhibit No. 1 in evidence, it is difficult to imagine adults using it unless forced to do so by illness but at the same time it could be a dangerously attractive nuisance to children. A witness who has had the exclusive agency for the sale of inclinators in Western Pennsylvania since 1929 testified at the Tax Court hearing that "the inclinator is purchased by people who are unable to walk stairs or forbidden to walk stairs", and that to his knowledge he had never installed an inclinator in the home of a family in robust health.

The Tax Court's sole reason for holding the inclinator to be a capital item of a personal nature and its cost not a medical expense is apparently that the inclinator had a useful life and a period of benefit to this petitioner extending far beyond 1948. The Commissioner's own regulations, however, include a medical deduction for "artificial teeth or limbs." Regulations 118, Section 39.23(x)–1. The 1954 edition of "How To Prepare Your Income Tax Return" which is prepared by the Internal Revenue Service as an aid to taxpayers lists eyeglasses, artificial teeth and braces as allowable medical and dental expenses; the 1953 edition also listed crutches, hearing aids "and similar items"; and a special Treasury Department pamphlet, "Your Federal Income Tax" (1953 ed.), included Seeing Eye dogs. And the Tax Court itself has allowed medical expense deductions for elastic stockings and eyeglasses.[3] All of these items can have a useful life and period of benefit to the particular taxpayer extending far beyond the year of deduction.

The Tax Court relied upon Estate of Hayne v. Commissioner, 1954, 22 T.C. 113. While that opinion rests on alternative theories, the facts there are radically different from the present situation. As the court said in the Hayne opinion, "The use of the elevator was not intended to have and had no beneficial effect upon the mitigation or cure of the paralytic condition of the decedent. Its primary function was to solve a transportation problem, resulting from wishes of the decedent to get out of his room, which were merely incidental to the illness." The other decision cited by the Tax Court, Seymour v. Commissioner, 1950, 14 T.C. 1111, concerned the cost of putting an oil burner into a home. The court disallowed that as a medical expense because it was "a permanent improvement in petitioner's property."[4]

---

Code, §§ 262, 263, as an unnecessary additional step after resolving the primary question of whether the expenditure is or is not proximately related to an illness.

3. In an unpublished memorandum decision, Cohen v. Commissioner, 1951, 10 T.C.M. 29. See, also, Denny. v. Commissioner, 1935, 33 B.T.A. 738, where the predecessor of the Tax Court allowed the cost of artificial teeth as a business expense.

4. Though we express no opinion on the validity of the Hayne and Seymour decisions it should be noted that both the elevator in the Hayne case and the oil burner in the Seymour case appear, at first glance at least, to fall within the specific exception provided by Section 24(a) (2) of the Internal Revenue Code of 1939, which reads:

"§ 24. (a) General rule. In computing net income *no deduction shall in any case be allowed* in respect of—

\* \* \* \* \* \* \*

"(2) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate; \* \* \*." (Emphasis supplied.)

Here "This inclinator, concededly, was not permanently affixed to and did not become a part of the realty." While the Tax Court treats it as a capital item outside the definition of Section 24(a) (2), there is no specific statutory direction of

It seems to us that we are here dealing with a true medical expense under the letter and spirit of the Code.[5] The cost of the inclinator was directly within the definition of medical care as given in Section 23(x). It was an amount "paid for the * * * mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body * * *." It should have been allowed.

The decision of the Tax Court will be reversed.

non-deductibility comparable to Section 24(a) (2) for capital items of a personal nature.

5. The Senate Finance Committee report (S.Rept.No.1631, 77th Cong., 2d sess., page 6) outlined the purpose of Section 23(x) as follows:

"This allowance is recommended in consideration of the heavy tax burden that must be borne by individuals during the existing emergency and of the desirability of maintaining the present high level of public health and morale."