FRANK S. AND EDNA DELP, HIS WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EDWARD DELP AND DOROTHY DELP, HIS WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF W. W. MEARKLE, DECEASED, AND LOUISE C. MEARKLE, SURVIVING WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 66034–66036. Filed September 17, 1958.

*Walter W. McVay, Esq.*, for the petitioners.
*Gerald Backer, Esq.*, for the respondent.

WITHEY, *Judge:* Respondent has determined deficiencies in petitioners' income tax for the years and in the amounts as follows:

| Docket No. | Petitioner | Deficiency | | |
|---|---|---|---|---|
| | | 1952 | 1953 | 1954 |
| 66034 | Frank S. and Edna Delp | $768.00 | $848.00 | $1,830.26 |
| 66035 | Edward and Dorothy Delp | 508.92 | 580.58 | 480.00 |
| 66036 | Estate of W. W. Mearkle and Louise C. Mearkle | 473.34 | 536.12 | 361.08 |

The issues presented for our determination are the correctness of the respondent's action in determining (1) that the payments in the amount of $1,600 per year made by each of the petitioners to their brother, Charles Delp, during the years in issue, were nondeductible expenditures and (2) that the cost of installing a dust elimination system in the residence of petitioners, Frank S. and Edna Delp, is not deductible as a medical expense.

### GENERAL FINDINGS OF FACT.

Some of the facts have been stipulated and are found accordingly.

Each of the petitioners filed joint income tax returns for the years 1952, 1953, and 1954 with the director of internal revenue at Pittsburgh, Pennsylvania.

### Issue 1.

### FINDINGS OF FACT.

Frank S. Delp, Edward Delp, and Louise C. Mearkle are sometimes hereinafter referred to as petitioners.

Petitioners, together with William Delp and Effie M. Falk, partners in the firm of S. Delp's Sons, executed an agreement with their brother, Charles Delp, on July 31, 1931, pursuant to which he was to receive one-sixth of the income of the partnership known as S. Delp's Sons for the balance of his life in consideration of his agreement that his deceased mother, Anna E. Delp, was not unduly influenced in the execution of her will. The agreement did not provide that Charles was to share any of the losses of the partnership and it further specified that he was to have no interest whatever in the partnership assets.

An income tax controversy arose with respect to the payments made to Charles under the aforementioned agreement of July 31, 1931. The controversy was presented to and decided by the Tax Court of the United States in *Frank S. Delp,* a Memorandum Opinion of this Court dated May 12, 1943.

On December 20, 1939, the petitioners, together with Effie M. Falk, entered into an agreement with Charles Delp by which the agreement executed on July 31, 1931, was modified to provide that

Charles was to share in the losses as well as the profits of the partnership firm, S. Delp's Sons, and to render certain services to the partnership upon request.

A further income tax controversy arose with respect to the payments made to Charles pursuant to the foregoing agreements executed July 31, 1931, and December 20, 1939. The issues in this controversy were submitted to and decided by the Tax Court of the United States in *Frank S. Delp*, 5 T. C. 1351.

Upon the death on December 19, 1951, of Effie M. Falk, a member of the partnership of S. Delp's Sons, the remaining partners decided to discontinue the operation of the partnership and to distribute the assets thereof. The partners, together with the Estate of Effie M. Falk, executed an agreement with Charles Delp on August 12, 1952, whereby the partnership of S. Delp's Sons was dissolved as of December 31, 1951. The agreement further provided as follows:

ONE: Charles Delp agrees that the partnership be terminated, and that Edward Delp, Frank S. Delp, Louise C. Mearkle, and Edward C. Falk and Frank I. Falk, and the Estate of Effie M. Falk, are released from any promise or obligation upon their part to pay him one-sixth (⅙th) of the income derived from the stocks, bonds, mortgages, real estate, or other assets of the aforesaid partnership or the estate of Anna E. Delp from and after December 31, 1951.

TWO: In consideration of which * * * Edward Delp agrees to pay the sum of $1,600.00 to Charles Delp; Frank S. Delp agrees to pay to Charles Delp the sum of $1,600.00; and Louise C. Mearkle agrees to pay to Charles Delp the sum of $1,600.00 for so long as he shall live, all payments to be made on or before December 31st of each and every year so long as Charles Delp shall live, commencing December 31, 1952. It is expressly understood that the above sums are individual obligations, and not to be construed as a joint obligation.

The petitioners deducted as ordinary and necessary business expenses the amounts paid to Charles pursuant to the agreement executed on August 12, 1952, on their joint income tax returns for the years 1952, 1953, and 1954.

### OPINION.

The agreement executed July 31, 1931, and the supplemental agreement of December 20, 1939, were a part of the record in *Frank S. Delp*, 5 T. C. 1351, wherein we held that by virtue of these agreements Charles Delp was made a partner in the firm of S. Delp's Sons.

The respondent disallowed deductions claimed by the petitioners on their joint income tax returns for 1952, 1953, and 1954 for the amounts paid by them to their brother, Charles Delp, in pursuance of the agreement executed August 12, 1952.

Petitioners contend that the claimed deductions represent ordinary and necessary expenses occurring in the operation of a trade or business within the meaning of section 23 (a) (1) of the Internal Revenue Code of 1939 and section 162 (a) of the Internal Revenue Code of 1954.

Alternatively, petitioners maintain that the amounts paid by them to Charles Delp represent nonbusiness expenses incurred in the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income under section 23 (a) (2) of the 1939 Code and section 212 of the 1954 Code.

Petitioners, however, have introduced no evidence indicating that they were engaged in any trade or business during the years in issue and, consequently, we are unable to find from the record herein that the amounts in question represent ordinary and necessary business expenses.

With respect to the contention made by petitioners that the amounts in question represent expenses made for the management, conservation, and maintenance of income-producing property, they have failed to sustain their burden of proof in that they have not identified the property to which they claim the payments in question relate, nor have they shown that the property was income producing.

*Issue 2.*

#### FINDINGS OF FACT.

For many years prior to 1954, petitioner, Edna Delp, had suffered from an asthmatic condition and was particularly allergic to dust. Consequently, for a number of years it had been necessary for petitioner, Frank Delp (the husband of Edna Delp), to take his wife to various places in the United States and Canada where the climatic conditions were such as would afford her temporary relief from her asthma.

The petitioners' physician advised them to get rid of all household dust that they possibly could and told them that the only way in which Edna Delp could obtain permanent relief would be to move her residence away from the city of Pittsburgh, Pennsylvania. In 1954 the existence of a device known as an electronic air cleaner came to the attention of Frank Delp. After carefully investigating the electronic air cleaner and making inquiry as to its possible beneficial effects, Frank Delp spoke of it to his physician who in turn recommended the installation of such an air cleaner as a means of eliminating dust in the Delp residence. Thereafter, Frank Delp proceeded to have an electronic air cleaner installed in his home at a total cost of $1,750. The installation of the dust elimination system was completed and payment was made on June 26, 1954. The material involved in the installation of the air-cleaning system included an electric air filter, a 15-inch blower, a one-quarter horsepower electric motor, 9 supply ducts and 8 return ducts running from the basement to the rooms on the first and second floors of petitioners' residence. The duct work was run between the flooring joists beneath the first floor

and between the walls of the house to the rooms on the second floor. The air blower and electric air filter were approximately 5 feet high and were cemented to the floor of the basement.

Subsequent to the installation of the electronic air cleaner in the Delp residence, the asthmatic condition of Edna Delp was improved so long as she remained indoors. The petitioners, Frank S. Delp and Edna Delp, deducted the $1,750 expended for the installation of the foregoing air cleaner and dust elimination system in their residence as a medical expense on their joint income tax return for 1954.

OPINION.

The respondent disallowed the deduction claimed by petitioners in the amount of $1,750 representing the cost of installation of an electronic air cleaner in their residence. The respondent's position is that the installation in question constitutes a permanent betterment of the property and is therefore a nondeductible capital expenditure.

The petitioners contend that the amount in question was paid for medical care within the meaning of section 213 of the 1954 Code [1] and that, as such, it is deductible in full as a medical expense for the year of payment. In support of their position, petitioners rely on the decision of the United States Court of Appeals for the Third Circuit in the case of *Hollander* v. *Commissioner*, 219 F. 2d 934, reversing 22 T. C. 646, in which it was held that the installation by the taxpayer, a coronary patient, of an inclinator or stair-seat elevator in her residence constituted a medical expense deductible under section 23 (x) of the 1939 Code. However, in so deciding, the court expressly found that the inclinator there involved did not constitute a permanent improvement to the property and pointed out that it was readily detachable therefrom.

The petitioners have not attempted to establish that the dust elimination system installed by them in their residence did not constitute a permanent improvement to the property. The record, on the contrary, tends to indicate that such an installation would represent an improvement to the property to which it was affixed. Further, it is obvious from the nature of the installation here involved that the electronic air-cleaning system was permanently affixed to the property

---

[1] SEC. 213. MEDICAL, DENTAL, ETC., EXPENSES.

(a) ALLOWANCE OF DEDUCTION.—There shall be allowed as a deduction the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent (as defined in section 152)—

\* \* \* \* \* \* \*

(e) DEFINITIONS.—For purposes of this section—

(1) The term "medical care" means amounts paid—

(A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance), or

(B) for transportation primarily for and essential to medical care referred to in subparagraph (A).

and that detachment would be a virtual impossibility. It is clear that the dust elimination system had a useful life and a period of benefit to petitioner, Edna Delp, extending far beyond the year of installation. Consequently, we are of the opinion that *Hollander* v. *Commissioner*, *supra*, is factually distinguishable from the situation here presented.

We have decided, in cases arising under section 23 (x) of the 1939 Code, that expenditures which represent permanent improvements to property are not deductible as medical expenses. *John L. Seymour*, 14 T. C. 1111; *Estate of C. L. Hayne*, 22 T. C. 113. Such expenditures, to the extent the permanent improvement of the asset increases the value of the property, at least in a sense compensate for the expense of such improvement.

The Internal Revenue Code of 1954 contains no substantial change in the definition of medical care but merely includes the addition of a clarifying subsection specifically permitting a deduction for amounts paid "for transportation primarily for and essential to medical care." Sec. 213 (e) (1) (B), I. R. C. 1954.

Apart from this amendment, the committee reports accompanying the enactment of the 1954 Code, clearly show a congressional intent to codify the preexisting concepts of medical care:

A new definition of "medical expenses" is provided *which incorporates regulations under present law* and also provides for the deduction of transportation expenses for travel prescribed for health, but not the ordinary living expenses incurred during such a trip. [H. Rept. No. 1337, 83d Cong., 2d Sess. (1954), p. 30. Emphasis supplied.]

The subsection is not intended otherwise to change the existing definitions of medical care * * * [S. Rept. No. 1622, 83d Cong. 2d Sess. (1954), p. 220.]

Inasmuch as *Hollander* v. *Commissioner*, *supra*, was not decided until after the enactment of the 1954 Code, we are unable to determine that Congress, when enacting section 213 of the 1954 Code, intended to modify our decisions in *John L. Seymour*, *supra*, and *Estate of C. L. Hayne*, *supra*, with respect to capital improvements, since both of those decisions predated the enactment of the 1954 Code.

Accordingly, although the expenditure in question was made solely for the purpose of mitigating a physical ailment, was prescribed by a physician, and bore a close relationship to the illness of Edna Delp both in time and effectiveness of treatment, thereby falling within the ambit of section 213 (e) (1) of the 1954 Code, the petitioners are not entitled to deduct as a medical expense the amount paid for the installation of an electronic air cleaner and dust elimination system in their residence which represents a permanent improvement thereto.

*Decisions will be entered for the respondent.*