John RIACH and Maude M. Riach, his Wife, Appellants,

v.

William E. FRANK, District Director of Internal Revenue, Appellee.

No. 17530.

United States Court of Appeals Ninth Circuit.

April 13, 1962.

Warren V. Clodfelter, Allen A. Bowden and Birney N. Dempcy, Seattle, Wash., for appellants.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, Edward L. Rogers and Charles Freeman, Dept. of Justice, Washington, D. C., Brockman Adams, U. S. Atty., and Charles W. Billinghurst, Asst. U. S. Atty., Tacoma, Wash., for appellee.

Before HAMLIN and MERRILL, Circuit Judges, and WALSH, District Judge.

HAMLIN, Circuit Judge.

This is an appeal by John Riach, appellant herein, from an adverse judgment of the United States District Court for the Western District of Washington in his suit against the District Director, appellee herein, for a refund of taxes paid for the year 1957.[1] The issue presented is whether appellant was entitled to a medical expense deduction for the year in question for the cost of installing a Hil-A-Vator upon his residential property for transporting taxpayer up and down a steep hillside which separated the street level of his residential lot and the lower level thereof. The district court had jurisdiction under 28 U.S.C.A. § 134, and this court has jurisdiction under 28 U.S.C.A. § 1291.

For 21 years appellant had lived at 4502 55th Avenue N.E., Seattle, Washington, in a two-story frame house, the top story of which was approximately at.

---

1. Although both John Riach and his wife, Maude Riach, are appellants herein because each claimed half of the deduction in question on their separate returns, the term "appellant", referring only to John Riach, is used in this opinion for the sake of convenience and clarity.

street level. The lot (115' x 250') upon which his house had been built was nearly level with the street for about 50 or 60 feet. It then inclined downward at an angle of about 45° for approximately 60 feet, and then leveled off for approximately 75 or 80 feet to the shore of Lake Washington. There were adequate rock steps and paths for getting up and down the property. The lower portion of the property was in lawn, and on the shore of the lake was a small boat dock. Appellant and his wife had their living quarters in the upper story of the house. The lower story of the house which was below street level was occupied by appellant's son.

In September, 1955, appellant suffered a coronary thrombosis which caused his hospitalization for 30 days and his convalescence at home for another 30 days. He then was permitted to go outside for slight physical activity. In January, 1956, he had a second heart attack, was confined in a hospital for 30 days and convalesced at home for about 60 days. By reason of his heart condition appellant was very much restricted in all his activities. He testified that in the summer of 1956 he was advised by his doctor "to continue to be extremely careful in any sort of physical activity and in no event to do anything that would tire me in any way at all, nothing that would cause fatigue." Appellant also testified that his physical condition completely prevented him from using the lower two-thirds portion of his property; thus, he testified, "I could no longer join my family down below on the lawns, my grandchildren or children, because I could not come up the steps. That would be far too much for me."

During the fall and winter months of 1956 he made inquiries about getting some equipment that would enable him to go to and from the upper and lower portions of his property. As a result of these inquiries he had installed on his property in the summer of 1957 a Hil-A-Vator. The court found that a Hil-A-Vator is essentially an electrically operated device used for transportation of passengers up and down steep hillsides. A small car designed to hold approximately 600 pounds was operated on tracks. The Hil-A-Vator was located close to one property line of appellant's lot.

In filing his income tax return for 1957 appellant deducted the cost of this Hil-A-Vator as an expense paid for medical care under Section 213 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 213. This cost was disallowed by the Commissioner and additional income taxes and interest were assessed against appellant. Appellant paid the additional taxes, filed a claim for refund, and thereafter timely brought an action in the district court for the recovery of $4,-258.20.

■ The district court stated that appellant in installing the Hil-A-Vator was motivated "by his heart condition and the desire to avoid overexertion." We believe there was ample evidence to support such a finding. However, the court also found that the Hil-A-Vator was a "betterment permanently attached to the plaintiff's property and substantially increased its value," and upon that ground concluded that its cost was not a deductible medical expense. The district court's conclusion was apparently based on the theory that the mere installation of a capital expenditure permanently attached to the land which constituted a betterment of the property in any amount was sufficient to disallow the cost of the installation as a medical expense.

The appellant contends that the only requirement in this case under section 213 for deductibility for medical care is that the cost of the item be incurred primarily for the mitigation, treatment or prevention of (heart) disease. The appellant admits, however, that an installation which is a capital expenditure is not allowable to the extent that the taxpayer is compensated therefor by an increase in the value of the property on which the expenditure is made. That is, the appellant contends that if the value of the property on which the installation is made is increased by an

amount less than the cost of installation a deduction for the difference between the cost and the increase is allowable.

The government offers two arguments in defense of the trial court's disallowance of any deduction in this case. First, the government contends that the cost of installation of a Hil-A-Vator or similar item is not deductible unless the item is necessary for the performance of an "essential living function" such as getting from a bedroom or bath to the kitchen on a lower floor. Secondly, the government contends that if the installation results in a capital expenditure permanently affixed to the property and the value of the property is increased in any amount the expenditure is not deductible in any amount.[2]

Title 26 U.S.C.A. § 213 provides in part:

"(a) *Allowance of deduction.*— There shall be allowed as a deduction the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care * * *.

*     *     *     *     *     *

"(e) *Definitions.*—For purposes of this section—

"(1) The term 'medical care' means amounts paid—

"(A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident, or health insurance), or * * *."

The question of what deductions a taxpayer may properly take for "medical care" has been considered in a number of cases. Those which are factually most close to the instant case are discussed below in chronological order.

In Hollander v. Commissioner, 219 F. 2d 934 (3d Cir.1955) the taxpayer had suffered an attack of coronary thrombosis in 1947. She had no bedroom or bath on the first floor of her home. The doctor tried to persuade her to move to a one-floor dwelling, but she refused to leave her home. The doctor then advised her to have a stair elevator installed. Accordingly, an Inclinator was installed. This was a collapsible chair propelled by an electrically driven cable along a channeled steel rail attached to the wall side of the stairs in the taxpayer's home. The Tax Court found that the purpose of the Inclinator "was to prevent her from doing any further damage to her heart". But the Tax Court refused to allow the deduction as a medical expense because an inclinator is by its inherent nature a capital item. In reversing the Tax Court the court of appeals said:

"The Tax Court, inferentially at least, seems to agree that the contraption involved adds nothing to the value of the house. * * * The Tax Court's sole reason for holding the inclinator to be a capital item of a personal nature and its cost not a medical expense is apparently that the inclinator had a useful life and a period of benefit to this petitioner extending far beyond 1948."

After the court pointed out that there had been allowances made for artificial teeth and limbs, braces, seeing-eye dogs, elastic stockings, and eye glasses, the court said:

"All of these items can have a useful life and period of benefit to the particular taxpayer extending far beyond the year of deduction. * * * It seems to us that we are here dealing with a true medical expense under the letter and spirit of

2. Giving some examples of what types of things give rise to a medical expense deduction the appellee makes the following statement in his brief (at page 15):

"Following are some examples of deductible expenditures: the cost of an air conditioner purchased to alleviate an allergy (Rev.Rul. 55–261 * * *); of

an 'autoette,' or wheelchair for a sick or disabled person (Rev.Rul. 58–8, 1958–1, Cum.Bull. 154; * * *); of a reclining chair for a cardiac patient (Rev. Rule 58–155, 1958–1 Cum.Bull. 156); and the cost of a specially designed swimming pool for treating a polio victim (Mason v. United States, supra [52 A.F.T.R. 1953]).

the Code. * * * It was an amount 'paid for the * * * mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body * * *.' It should have been allowed."

The decision of the Tax Court was reversed.[3]

The taxpayer in Post v. United States, 150 F.Supp. 299 (D.C.Ala.1956), suffered a coronary occlusion in 1953. He was advised that he could not climb stairs without serious danger of a reoccurrence of his coronary occlusion and that he should install an elevator in his rented apartment. He had a right to remove the elevator and it was stipulated that due to its design it could be removed in less than one day's time. The court held that under the Internal Revenue Code of 1939, where the definition of medical expenses is the same as in the 1954 Code, the expenditure was part of the treatment for the "mitigation or prevention" of a recurrence of an illness or for the "purpose of affecting" a structure or function of the body, and that it was deductible.

In Snellings v. United States, 149 F. Supp. 825 (D.C.Va.1956), Mrs. Snellings had hypertrophic arthritis since 1936. She received medical attention up until 1947, but thereafter did not consult a physician. The doctor testified that her condition had deteriorated progressively and that it was unlikely that it would improve. Traversing the stairs in her home would bring on pain, causing her to be incapacitated and then further harm would be brought about by reason of her inactivity. The doctor had not prescribed the installation of the elevator in 1953. In that year her husband stated that it was practically impossible for her to traverse the stairway in their home and he installed an elevator. The court stated that the photograph of the elevator clearly revealed that it did not constitute an improvement to the premises from the standpoint of appearance and that under no circumstances could it be considered a capital improvement. The court further stated that the preponderance of the evidence clearly established that the elevator was installed to mitigate the aggravation of the arthritic condition. The court stated:

"In the opinion of the Court the decision in this case is controlled by Hollander v. Commissioner of Internal Revenue, 3 Cir., 219 F.2d 934. While it is true that in the Hollander case the physician advised the installation of the elevator, it is not contended that the medical advice must be given as a prerequisite to constituting a proper deduction for medical expenses. It appears that the installation of the invalid elevator in the present controversy was incurred primarily for the prevention or mitigation of the disease known as osteoarthritis. It differs with Hayne's Estate v. Commissioner, 1954, 22 C.T. [sic] 113, where there was no beneficial effect upon the mitigation or cure of the paralytic condition. In the Hayne's case the primary function was to solve a trans-

3. In Hollander the court distinguished the Estate of Hayne, 22 T.C. 113 (1954) which is also distinguishable from the instant case and most of those cases which came after Hollander. It, now, would seem to be of questionable validity in any event. In Estate of Hayne the cost of an elevator for the use of a paralytic to go from his room "for trips outside of the home or downstairs" was disallowed as a deduction for medical care. The court said:

"The use of the elevator was not intended to have and had no beneficial effect upon the mitigation or cure of the para-

lytic condition of the decedent. Its primary function was to solve the transportation problem, resulting from wishes of the decedent to get out of his room, which were merely incidental to the illness.

"Our conclusion, from careful consideration of all of the evidence on the point, is that the installation and use of the elevator were never prescribed to alleviate or mitigate any ailment of the decedent and that the cost was incurred primarily for purposes having only an incidental relation to the illness."

portation problem, and not to mitigate the probable aggravation of the condition."

The court held that the expense of the elevator was deductible.

The taxpayer in Donnelly v. Commissioner, 262 F.2d 411 (2d Cir.1959), was a victim of infantile paralysis and abdominal cancer. As a practical matter taxpayer was unable to use public transportation, and he sought to deduct as medical expense the sums expended for operation of his specially designed automobile to and from his work and the costs of his workclothes and aprons. The Tax Court decided against him and the court of appeals affirmed the disallowance of the deduction, citing many cases that expenses incurred in commuting to and from home to his work are of a personal nature and hence non-deductible. They held that the automobile expense could not be deducted as a medical expense because it was not contained in the statutory definition of medical care. The court's opinion stated:

"The fact that an indirect medical benefit may result from a personal expense does not make that a personal expense deductible under the 'medical care' provisions of the statute. * * * Under the language of the statute deductible expenses are limited to those *primarily* incurred for medical care.[4]"

Berry v. Wiseman, 174 F.Supp. 748 (D.C.Okl.1958), involved an elevator which was installed in a home in order to alleviate an acute coronary insufficiency. The construction was permanent but it did not have the effect of increasing the value of the property. It was held that this was a proper medical deduction under the Internal Revenue Code of 1954.

In 1959, subsequent to the decision in Berry v. Wiseman, supra, the Internal Revenue Service issued Revenue Ruling 59–411, 59–2 CB 100, in which it referred to Berry v. Wiseman and said:

"The court ruled that the cost of an elevator installed in taxpayers' residence was deductible as a medical expense. The elevator had been installed at a cost of some $4,400 upon the advices of a doctor to alleviate an acute coronary insufficiency of Mrs. Berry.

"Accordingly, expenditures made for medical purposes will not be disallowed merely because they are of a capital nature. However, it is the position of the Service that the capital nature of an expenditure will be a consideration in determining its deductibility. If such expenditures constitute amounts paid out for permanent improvements which increase the value of any property or estate, they will not be allowed as medical expense deductions.

"Steps will be taken to modify outstanding rulings contrary to this court decision and to conform Treasury regulations promulgated under Section 213 of the Internal Revenue Code of 1954."

■ Appellee in this case contends that the cases set out above, particularly those involving installation of elevators and other lifts in residences, are distinguishable from the instant case. As a ground for distinguishing these cases the government suggests that in each of the above cases the lift device was necessary if the patient was not to impair his health in carrying out essential living functions, "such as eating and sleeping and using the bathroom". It is contended that because the Hil-A-Vator in this case was not installed for appellant's use in these "essential living functions" that the expense must be disallowed as a deduction for medical care. We do not believe that the law providing for medical expense deductions should be so narrowly construed. There is nothing in the statute, regulations or the cases which limits deductions to those which are necessary for "eating, sleeping and using the bathroom". There is more to life than that. In this case the appellant was only using his property in the same manner in which he had been

4.  262 F.2d at 413.

using it for many years. He had a right to enjoy the associations with his family, including his children and grandchildren, in a normal manner. To go from one part of his city lot to another in this case was not unreasonable and it was something that any property owner could expect to enjoy. Appellant had been advised to be extremely careful in any sort of physical activity. His physical condition completely prevented him from using his property in the way to which he had become accustomed and which way was in itself reasonable. We think that the evidence shows without contradiction that his motivation in installing the Hil-A-Vator was primarily for the mitigation or prevention of disease in the reasonable use of his property.

Having decided that the cost of the installation of the Hil-A-Vator was incurred for medical care within the meaning of the statute, the next issue is how much, if any, of the cost of installation is deductible. The position of the government on this issue was stated in its brief in the following manner:

> "Expenditures for assets purchased for 'medical care' in the statutory sense, even though primarily capital in nature (that is, durable or having a useful life of more than one year), are nonetheless deductible if the assets do not constitute 'permanent improvements which *increase the value* of any property or estate." [5]

Thus, the position of the appellee is that if the expenditure is for a capital improvement of a permanent nature, nothing is deductible as a medical expense if the value of the property on which the expenditure is made is increased in any amount.

Section 263 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 263, provides in part as follows:

> "(a) *General rule.*—No deduction shall be allowed for—

> "(1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate. * * *"

The government contends that section 263 controls the medical expense section (213) and establishes that permanent improvements increasing the value of property (in any amount) are not allowable even if spent for medical care.

The position of the appellant herein is that either section 263 does not control 213 or that when both sections are read together the allowance of a medical expense deduction for a capital item is prohibited only to the extent that the expenditure increases the value of the property.

Section 213 itself restricts allowable deductions for medical expenses to those "not compensated for by insurance or otherwise". Since an increase in the value of property on which a capital expenditure was made, albeit for medical care, would compensate the taxpayer for his expenditure, the expenditure to that extent would not be deductible. Thus, the appellant's contention that a deduction for medical expense is prohibited only to the extent that the value of the property is increased by the capital expenditure would appear to be sound even without the presence of section 263.

Under the government's theory any expenditure for medical care which constitutes a capital improvement and which increases the value of the property, regardless of the amount of the increase, is not allowable as a medical expense deduction. We think that this argument is unsound. If it is supposed that an admittedly proper medical care expenditure was made upon the taxpayer's property at a cost of $1,000 and the finding of the court is that the value of the whole property was increased by $1, it would not seem reasonable that the entire cost be disallowed as a deduction.

The Tax Court has recently been confronted with this problem in Gerard v. Commissioner, 37 T.C. No. 81 (1962

5. Brief of Appellee, p. 14; citing Rev.Rul. 59–411, 1959–2 Cum.Bull. 100 and cases most of which appear in this opinion. supra.

Prentice-Hall Tax Court Cases # 37.81). In this case the taxpayers had a daughter who was afflicted with cystic fibrosis. Stating the facts the court said:

"One of the methods of combating the progress of the disease is the maintenance of a relatively constant temperature and a high humidity. Dr. Swachman recommended to petitioners that they install an air conditioning unit as a means by which the humidity and temperature could be controlled in the petitioners' home.

"In 1958 petitioners installed in their home a central air conditioning unit at a cost of $1,300, which installation increased the value of their home in the amount of $800."

After reviewing the authorities (most of which have been cited herein) the court stated:

"Respondent admits on brief where the taxpayer is able to show the medical care expenditure in the nature of a permanent addition to the residence does not increase the value of the home, it qualifies for medical deduction. We think it necessarily follows that where the taxpayer is able to show such increase in value is less than the expenditure, the amount in excess of value enhancement is deductible as medical expense. Here the parties stipulate the cost of installing the air conditioning unit was $1,300 and the unit increased the value of the home in the sum of $800. It follows that the balance, or $500, qualifies for medical deduction."

We agree with the holding in the Gerard case, and we believe that it rests upon a sound and proper construction of the provisions of the Internal Revenue Code. Therefore, we hold that the appellant in this case was entitled to have a deduction for medical expense for the difference, if any there be, between the cost of installing the Hil-A-Vator and the amount of the increase in value to property, if any, attributable to such installation. In other words the taxpayer in this case is only prohibited from deducting the cost of installation of the Hil-A-Vator to the extent that it increased the value of his property.

Both appellant and appellee introduced testimony in the district court on the issue of whether and to what extent the value of appellant's property was increased by the installation of the Hil-A-Vator. Each party called one expert witness on this issue. The expert produced by the appellant testified that in his opinion such an installation did not increase the value of the property in any amount, and he gave his reasons for his opinion. Appellee's expert witness testified that in his opinion the installation of the Hil-A-Vator added to the market value of the property as a betterment thereto. He described a betterment as a capital expenditure which increases the utility or the market desirability of the property. He then gave the following testimony:

"Q. Then your testimony is that this tends to increase the value of this property?

"A. That is right.

"Q. How much does it tend to increase the value of this property?

"A. I was not asked to determine that."

In the instant case the district court did not make any finding as to the amount of an increase in the value of the property, if any there be. The district court did find that the installation of the Hil-A-Vator upon appellant's property "substantially increased its value." However, we find no evidence in the record to support a finding of a substantial increase in value. Furthermore, the word "substantially" is so vague that we are unable to give it any meaning in the context of this case.

It is readily apparent that the district court did not consider the law to be as it is set forth in this opinion.[6]

6. Under the apparent view of the district court a finding as to any amount of increase in the value of the property would have been irrelevant.

The judgment is reversed and the case is remanded to the district court for such proceedings as may be necessary in the light of this opinion.