W. Lawrence Oliver, W. Lawrence Oliver and Hazel P. Oliver v. Commissioner.
Oliver v. Commissioner
Docket No. 3140-63.
United States Tax Court
T.C. Memo 1965-83; 1965 Tax Ct. Memo LEXIS 243; 24 T.C.M. (CCH) 438; T.C.M. (RIA) 65083; April 7, 1965
*243 Deductions: Medical expenses: Special additions to house: Cost: Fact finding. - The taxpayer's wife was suffering from a disease and in building a new house, the taxpayer had installed certain features which were designed for the care of her. The Tax Court sustained the Commissioner in disallowing a portion of the cost of these features since the taxpayer offered no proof of the cost of these features nor of the extent to which such costs did not increase the value of the home. Depreciation: Automobiles: Salvage value. - The taxpayer failed to take into account salvage value in computing the depreciation of two cars in his business and, as a result, the Commissioner's determination of a salvage value was upheld. Capital gain v. ordinary income: Payments for modification of a lease. - The Tax Court found that the taxpayer's receipt of money in consideration for his assent to the assignment of a lease by his lessee was ordinary income since it was similar to a payment for cancellation of a lease. W. Lawrence Oliver, pro se, 416 E. Sixth St., Des Moines, Iowa. James H. B. Dillard, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: The respondent determined deficiencies in income tax of W. Lawrence Oliver for 1959 in the amount of $834.27 and of both petitioners for 1960 and 1961 in the amounts of $1,691.17 and $2,831.42, respectively. The issues for decision are (1) the amount of medical expenses allowable as deductions for each year; (2) the computation of depreciation on automobiles used in business; and (3) whether proceeds of a transaction in 1960 concerning a lease are ordinary income or capital gain. Some facts are stipulated. Findings of Fact The stipulation of facts and the exhibits *245 attached thereto are incorporated herein by this reference. The petitioners, husband and wife, are residents of Des Moines, Iowa. W. Lawrence Oliver filed a separate income tax return for the calendar year 1959. The petitioners filed joint income tax returns for the calendar years 1960 and 1961. All returns were filed with the district director of internal revenue at Des Moines. W. Lawrence Oliver, hereinafter sometimes referred to as the petitioner, is an attorney at law, admitted to the bar of the State of Iowa. He has practiced law in Des Moines for more than 30 years and has maintained an office for many years at 416 East Sixth Street, in Des Moines. Hazel P. Oliver has been under medical treatment for multiple sclerosis since 1949. There is no known cure for this. Recommended treatment includes avoiding fatigue and extremes of climate and having moderate exercise under medical direction. She has been almost completely paralyzed at times and requires nursing attention. In the taxable years the petitioners paid the following amounts of medical expenses: Included Drugs
and Medi-
Year
Amount
cines
1959
$3,896.07
1960
1,295.13
$390.00
1961
1,395.99
340.12
*246 In 1959 the petitioners lived in a sixroom house at 1047 Thirteenth Street. The petitioner used one room as a study in which to carry on part of his law practice. The house was not air conditioned. This house was taken by the State Highway Commission through condemnation proceedings. The petitioners rented an apartment for some six months. In April 1959 Hazel was hospitalized in Des Moines and later taken by ambulance to the Mayo Clinic in Rochester, Minnesota. She was treated there from April 17 until May 30. Petitioner visited her there every weekend from Friday evening until Sunday evening and took her for rides in their automobile. He stayed at a hotel on these visits. She returned to Des Moines after May 30. She was again hospitalized in Des Moines in July 1959. In 1960 the petitioners built a new eightroom home at 5795 Northwest 73rd Street Place, which they have occupied since August 17, 1960. This was built with many features designed for the care of Hazel. There were ramps to the entrances, doors wide enough to accommodate a wheel chair, air conditioning, an intercommunication system, and a built-in stereo system with speakers in each room. The petitioner used one room *247 as an office to carry on part of his law practice and be near his wife to serve with nursing when needed. Also, petitioner installed a bed equipped with motors operated by push buttons which permitted the patient to raise or lower parts of the bed. In 1961 petitioner took Hazel to Arizona by air to spend some time in the favorable climate there. She stayed with a relative. Petitioner furnished some funds for her expenses while there. On the 1959 return petitioner claimed a deduction for depreciation in the amount of $675 on a 1956 Oldsmobile acquired in 1956 at a cost of $4,500 and estimating its useful life at three years and its business use at 90 percent. On the 1960 return a deduction was claimed for depreciation in the amount of $351.45 on a Chevrolet acquired in July 1960 at a cost of $3,514.46 and estimating its useful life at five years. On the 1961 return deductions were claimed for depreciation of $351.45 on the Chevrolet and of $835.96 on an Oldsmobile acquired in June 1961 at a cost of $5,015.79 and estimating the useful life at three years. In these computations no amount was assigned as salvage value. The 1956 Oldsmobile was not traded in on the one purchased in 1961 *248 but was sold for junk in the fall of 1961 for $50. After purchasing the Chevrolet in 1960, petitioner operated two automobiles. In 1948 petitioner purchased two tracts of land in Des Moines bordering on Euclid Avenue and west of the Des Moines River. Petitioners, as lessors, gave to Charles H. Barrett and Ruth Mary Barrett, as lessees, a lease of a tract south of Euclid Avenue for a term of 99 years from March 17, 1959. The contract provided for rent, as follows: Commencing on the 1st day of June, 1959, the lessee shall pay to lessors, annual rentals, for the premises based upon the fair market value of the ground, to be determined and re-determined then and every 10 years thereafter during the entire term hereof; the annual rental to be paid shall be 6% of the agreed or appraised value of the ground for such rental period, payable in advance in equal monthly installments. Lessor and lessee agree that for the first 10-year period hereof the fair market value of the West 622 feet of the said described real estate is the amount of $150,000, and lessee agrees to pay lessor annual rent of $9,000.00 payable in monthly installments of $750.00, commencing on the 1 day of June, 1959, *249 and a like sum on the 1st day of each month thereafter during the initial 10-year period. Lessor and lessee agree that when the remainder of the leased premises, being all thereof except the West 622 feet, has been re-zoned for M-1 use, as defined by the Zoning Ordinance of Des Moines, Iowa, the fair market value thereof shall be determined by applying the same front foot rate thereto as was applied to determine the value of the West 622 feet thereof, and lessee shall pay to lessor the annual rent as so determined in equal monthly installments, commencing on the 1st day of the month following the effective date of the re-zoning ordinance. The property leased was zoned for light industrial use as to the west portion, but the east 362 feet was zoned unclassified, which would not permit construction of buildings. Prior to September 1960 the east tract was rezoned, and Barrett commenced paying rent to petitioner. On September 23, 1960, the Barretts, lessees, assigned their right, title, and interest in the above lease to Bonobest Development Corporation. The petitioners consented to such assignment. At the same time, the petitioners agreed to a supplement to the lease providing that *250 the rent payable for the first ten years be payable for 20 years and that there shall be no additional rent paid for the east 362 feet covered by the lease during the first 20-year period. Oliver and Barrett signed a further agreement on the same date, reading in part: Whereas there is now existing by and between W. Lawrence Oliver and Charles A. [H.] Barrett of Des Moines, Iowa one certain Land Lease covering Land on the South side of Eudlid Avenue * * * and Whereas the Said Lessee is now in the process of Selling said lease to Mr. Boytos of Youngtown, Ohio for the sum of $15,000.00 cash and other considerations, and in order to induce said Sale IT is HEREBY AGREED as follows to wit: That W. Lawrence Oliver will waive the payment of rent of the East 362 feet of said tract of ground for the first 20 years under said Lease upon the condition that Charles H. Barrett will pay to W. Lawrence Oliver the sum of $7,500.00 which is 1/2 of the cash Sale price of said Lease. That Said payment of $7,500.00 is to be paid out of the sum of $15,000.00 mentioned herein, and said sum is to be paid to W. Lawrence [Oliver] at the time that the payments are made to Charles H. Barrett by Mr. *251 Boytos or this representative. Opinion The parties have stipulated that certain items of medical expenses were paid by the petitioners in the taxable years and are deductible. The petitioners contend that certain other items are also deductible. They do not identify these items as to payee or amount. They mention, on brief, trips to a warm climate in winter and lodging there; a specially-built home with air conditioning; intercommunication equipment; ramps at the doors; stereophonic system for music therapy; and rides away from the home as part of the treatment for multiple sclerosis. In Commissioner v. Bilder, 369 U.S. 499 (1962), the Court held that the deduction allowed by section 213, I.R.C. 1954, [1] for medical care includes expenses for transportation to a more favorable climate where such a climate is a primary part of necessary medical treatment, but does not include meals and lodging while away from home for that purpose. The items stipulated as allowable here include air fares, but petitioner's contention that living expenses of Hazel while in Arizona should also be deductible is foreclosed by Bilder, supra.
*252 In Raymon Gerard, 37 T.C. 826 (1962), we held that where the taxpayers installed central air conditioning in their home for the benefit of a daughter afflicted with cystic fibrosis, the cost of the installation, to the extent it did not increase the value of the home, was deductible as a medical expense. In that case the cost of installation and the increase in the value of the home were stipulated. See also Riach v. Frank, 302 F. 2d 374 (C.A. 9, 1962). The petitioner here, except for his testimony, has made no proof of the costs of the special features of the home built in 1960 nor of the extent to which any such costs did not increase the value of the home. While he said he had experience as an appraiser of real estate, there was no corroboration of that statement. He stated that providing ramps at the entrances and wider doors cost $224.90 more than in an ordinary house and added nothing to its value; that the central air conditioning cost $1,200 and added only $600 to the value of the house; that the intercom system with FM and AM radio cost $800 and added only $500 to the value of the house; and that a stereo system wired in at the time of construction *253 cost $5,000 and added only $2,000 to the value. He said also that the special bed equipped with motors, whereby the patient could adjust the level of head or feet, cost $600. In accordance with the principle stated in the Gerard case, supra, we believe that some part of the costs of the special features of the home are allowable as medical expenses. Exercising our best judgment, we find that $900 of the cost of the special features of the home and $500 for the special bed are allowable as deductions for medical expenses in 1960. There is no evidence of additional expenses for 1959 or 1961. The petitioner operated a 1956 Oldsmobile during 1959 and until July 1960. He then acquired a Chevrolet which he used through 1960 and 1961. In June 1961 he acquired a new Oldsmobile. The 1956 Oldsmobile was not traded in on the new one but was sold for junk in the fall of 1961 for $50. Petitioner used the vehicles in his law practice and to travel between home and office, and for personal uses. In his tax returns petitioner treated the expenses of operating the vehicles as being 90 percent for business purposes. Respondent does not question this ratio. Petitioner, in computing depreciation, *254 estimated the life of the 1956 Oldsmobile at three years, that of the Chevrolet at five years, and that of the 1961 Oldsmobile at three years. He computed the deductions for depreciation upon cost, without estimating any salvage value for the vehicles. Respondent determined that the vehicles had salvage values of $1,000, $800, and $1,250, respectively, and reduced the allowable deductions for depreciation accordingly. This is in accordance with the Income Tax Regulations [2] relating to section 167, I.R.C. 1954, providing for the depreciation deduction. See Massey Motors v. United States, 364 U.S. 92 (1960). Petitioner has not shown that the respondent's estimate of salvage values is erroneous. While petitioner contends that there was no salvage value in the 1956 Oldsmobile at the end of 1959, he received $50 as junk value nearly two years later. The other automobiles were still in use at the end of 1961 and undoubtedly had some value then. We sustain the respondent. *255 The petitioner owned a tract of land which he had leased to Charles H. Barrett for a term of 99 years from March 17, 1959. Rent was to be paid commencing June 1, 1959, on the west 622 feet of the tract, on the basis of an agreed fair market value of $150,000, and an annual rental of six percent of such value, or $9,000. As to the east part of the tract, there was to be no rent until it was rezoned for M-1 use, and after being rezoned the rent was to be based on the fair market value by using the same front foot rate as was applied to the west portion. The land had been rezoned before September 1960, and Barrett was paying rent on the east as well as the west portion of the land. The lease was not assignable without consent of the lessor. In September 1960 Barrett wished to assign the lease to another party who refused to buy it unless the petitioner would waive rent on the east part of the land for the first 20 years. Barrett was to receive $15,000 from the sale and he offered to pay $7,500 of this to petitioner for a waiver of rent on the east part of the tract for 20 years. Petitioner agreed to this. Petitioner reported $7,500 on the 1960 return as long-term capital gain. Respondent *256 determined that the gain was taxable as ordinary income. Barrett had to secure petitioner's consent to the assignment. The payment was to secure petitioner's consent and also to secure his waiver of rent for 20 years on part of the tract. This payment for a modification of the lease is a substitute for some of the income which the petitioner might otherwise have received in rent. It is similar to a payment for cancellation of a lease. It represents ordinary income, not capital gain. Hort v. Commissioner, 313 U.S. 28 (1941); Holt v. Commissioner, 303 F. 2d 687 (C.A. 9, 1962). On the 1961 return the petitioners claimed a deductible expense of $5,234 for commissions on a schedule of income from rents. Respondent disallowed this item for lack of substantiation. No evidence was introduced to show the nature or the fact of this claimed expenditure. The respondent must be sustained. Certain issues are conceded by each party. Decision will be entered under Rule 50. Footnotes
1. SEC. 213. MEDICAL, DENTAL, ETC., EXPENSES. * * *
(e) Definitions. - For purposes of this section - (1) The term "medical care" means amounts paid - (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident of health insurance), or (B) for transportation primarily for and essential to medical care referred to in subparagraph (A).↩
2. Sec. 1.167(a)-1. Depreciation in general. * * *
(c) Salvage. (1) Salvage value is the amount (determined at the time of acquisition) which is estimated will be realizable upon sale or other disposition of an asset when it is no longer useful in the taxpayer's trade or business or in the production of his income and is to be retired from service by the taxpayer.↩