Henry B. and Betty J. WALLACE, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 8–2117–C–2.

United States District Court, S. D. Iowa, C. D.

Feb. 5, 1970.

---

David W. Belin and Jeffrey E. Lamson, Des Moines, Iowa, for plaintiffs.

Johnnie M. Walters, Donald R. Anderson, Nestor M. Nicholas, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

HANSON, District Judge.

This case came before the Court for trial without a jury. Neither party offered any testimony. The evidence consisted of stipulations of facts and documents, and party-admissions:

### JURISDICTIONAL FACTS

1. On March 6, 1964, plaintiffs [1] duly filed their Federal Income tax return for the calendar year 1963 with the District Director of Internal Revenue at Des Moines, Iowa. Plaintiffs at the time of filing this return paid in full the tax shown by the return to be due in the amount of Thirteen Thousand Dollars and Eighty Cents ($13,000.80) (Tr. 12–13).

2. A deficiency for the 1963 taxable year in the amount of $47,250.30 was subsequently assessed and was paid on February 16, 1967, along with interest of $8,032.56, a total of $55,282.86 (Tr. 13).

3. Plaintiffs filed a timely claim for refund for the taxable calendar year 1963 on March 31, 1967, with the District Director of Internal Revenue at Des Moines, Iowa (Pltf. Ex. E; Tr. 13.

4. More than six months elapsed between filing the claim for refund and institution of this suit.

5. This Court has jurisdiction pursuant to Title 28, U.S.C. Section 1346(a) (1).

### FINDINGS OF FACT

6. Henry B. and Florence Wallace were married on August 11, 1939 in Des Moines, Iowa. In November of 1962 Florence Wallace initiated divorce proceeding in Polk County, Iowa District Court against Henry B. Wallace (Tr. 12). Immediately thereafter the Court entered the following Restraining Order in the divorce action. (Pltf. Ex. C):

Now on this 9th day of November, 1962, upon reading the Petition of the Plaintiff in this cause and being advised in the premises the Court finds that the following Order should issue.

It is therefore ordered, adjudged and decreed that during the pendency of this action the Defendant be and he is hereby restrained from disposing of any personal property of the Plaintiff or the Defendant or of the children of the Plaintiff and Defendant except Defendant shall be permitted to expend reasonable amounts from his own funds for the purpose of his own usual and ordinary maintenance.

---

1. This case involves the income tax consequences to Henry B. Wallace as the result of a divorce suit filed by Florence K. Wallace. A decree of divorce was entered on October 30, 1963. In November, 1963 Mr. Wallace married Betty J. Hampshire and for the 1963 tax year they filed a joint federal income tax return. Mrs. Wallace is a party to this action solely because a joint return was filed. Henry B. Wallace is sometimes referred to herein as plaintiff.

7. In April, 1963 Florence K. Wallace filed with the Polk County District Court in the divorce action an Application For Order Re Improvement of Family Dwelling (Pltf. Ex. D) alleging that heating facilities were inadequate to properly heat the first floor of the house, the heating system having only 57% of the needed capacity at the furnace and the distribution system also being inadequate. Mrs. Wallace claimed she had received medical advice to the effect that a new heating system along with air conditioning and an electro-static type filter were necessary to give some relief to her son who was suffering from asthma.

8. Joel D. Teigland, M.D. has stated in writing (Pltf. Ex. F):

Henry D. Wallace has been a patient since 1962 with severe asthma, rhinitis and allergic skin rash. Because of the continued asthma symptoms, all efforts have been made to control him with medication and desensitization.

To further avoid exposure, I recommend centralair conditioning and electrostatic filter in their home. With the above, his condition is definitely improved.

9. Plaintiffs claim a medical deduction of $3,946.12, a portion of the total cost of $4,946.12 which was expended for a new furnace, duct work, registers, central air-conditioning unit, humidity control unit, electric air filter and the related electric wiring in the home occupied by Henry Wallace's former wife Florence. The break-down of the total cost is as follows:

| | |
|---|---|
| furnace, runs and registers | $1,991.74 |
| labor on above | 450.00 |
| air-conditioning unit | 1,182.95 |
| humidity control unit | 106.00 |
| electrostatic air filter | 555.60 |
| labor on above | 350.00 |
| related electrical wiring | 309.83 |
| TOTAL | $4,946.12 |

10. The record contains no evidence with respect to whether or not the fair market value of the home occupied by the former wife of Henry B. Wallace increased as the result of installation of central air-conditioning and an electro-static filter.

11. On October 29, 1963 Florence K. Wallace and Henry B. Wallace executed a Stipulation of certain property rights which states in pertinent part (Pltf. Ex. B):

In the event that upon the trial of the above-entitled cause a divorce is granted by the Court dissolving the marriage between the parties hereto, the parties desire to settle all property rights of the parties except as otherwise expressly provided herein and alimony, custody and support payments in connection with and incident to the divorce if the same be granted and subject to the approval and decree of the Court.

Now, therefore, in consideration of the covenants and agreements hereinafter contained, it is mutually stipulated and agreed by and between the plaintiff and the defendant as follows:

1. The plaintiff is to retain as her own property all of the interest of plaintiff in any real estate located in Jasper County, Iowa.

2. The defendant shall convey to the plaintiff by good and sufficient warranty deed, free and clear of all liens and encumbrances including all regular and special taxes due and payable in 1963, the real estate locally known as 147 Tonawanda Drive, Des Moines, Iowa, and legally described as:

Lot One (1) of Gardner Cowles Woods, Plat 2, an official Plat, now included in and forming a part of the City of Des Moines, Iowa, and the North Ten (10) feet of the West One Hundred Forty-one and eight-tenths (141.8) feet of Lot Five (5) of Gardner Cowles Woods, an Official Plat, now included in and forming a part of the City of Des Moines, Iowa, and the South Two and One-half (2½) feet, more or less, of the North Six and One-

half (6½) feet of Lot Seventy-six (76) paralleling the North line of said Lot Seventy-six (76), of Brown's Subdivision of Lots Eleven (11), Fourteen (14), and Fifteen (15) in Brown's Woods, Section Seven (7), Township Seventy-eight (78) Range Twenty-four (24), all in and now a part of the City of Des Moines, Polk County, Iowa.

3. The defendant shall pay to the plaintiff in cash the sum of $7,700.74, and in addition the defendant shall pay the Butcher Furnace Company bill of $4,636.29, plus the electrical work of Ace Heating and Electric Company of $309.83.

4. All of the home furnishings and fixtures shall be the property of the plaintiff except that the defendant shall be entitled to all of his personal effects, the twenty-year electric clock, the Indian drums, the two-wheel trailer, the watch in glass dome received from his father and mother, the antique rocker owned by his great-great-grandfather, his personal books, and one of the two silver platters received from the President's Cabinet.

5. Plaintiff will retain ownership to the 1960 Ford station wagon.

6. The defendant shall pay all Court costs.

7. The defendant shall pay the attorney fees for the plaintiff's attorney, Carl A. Smedal, in the amount of $12,500.00.

8. The defendant shall pay to Carl A. Smedal for the Brown Engineering Company the sum of $125.00 and to Martin, Cloutier & Sanderson the sum of $500.00.

\* \* \* \* \* \*

10. The plaintiff shall be entitled to no alimony.

\* \* \* \* \* \*

12. The parties acknowledge that this Stipulation Agreement does not include any division of property with regard to the stock of either party in Pioneer Hi-Bred Corn Company of Canada, Ltd., Pioneer Hi-Bred Corn Company, Des Moines, Iowa, Pioneer Hi-Bred Corn Company of Illinois, and Pioneer Hi-Bred Corn Company, Inc., Tipton, Indiana. It is the claim of the plaintiff that under the circumstances of this case, the Court, pursuant to the provisions of Section 598.14 of the 1962 Code of Iowa, should decree the plaintiff to be the owner of certain shares of stock in said companies in addition to these shares of stock already owned by the plaintiff. It is the claim of the defendant that the plaintiff is not entitled to any additional shares of stock in said companies because the stock was not accumulated through the joint efforts of plaintiff and defendant but rather was given to the defendant by his parents. The parties acknowledge that in the event the Court grants a divorce between the parties, the matter of disposition of stock in any of said companies under the law of Iowa and Section 598.14 of the 1962 Code of Iowa is vested in the Court and that the Court may make such order in relation to said property as shall be right.

13. The respective checking and savings accounts of the respective parties shall remain as their own property, and each party shall retain all insurance policies owned by the respective party.

\* \* \* \* \* \*

16. It is mutually agreed by the parties that each of the parties hereto agrees to execute and deliver to the other party any documents that may reasonably be required to accomplish the intention of the instrument and shall do all other things necessary to this end. If either party shall fail to comply with any of the provisions of this Agreement, this particular paragraph of this Agreement shall constitute an actual grant, assignment and conveyance of property and rights in such manner and with such force and effect as may be necessary to effectuate the terms of this Agreement.

17. Upon compliance by each of the parties with the terms and conditions set out by this Agreement and as specified herein, the obligations and liability of defendant to plaintiff and the plaintiff to defendant shall be wholly and finally completed and shall be in full and final settlement of all obligations, rights and duties between the parties, subject to the decree of the Court.

18. It is agreed that this Stipulation shall be submitted to the Court for approval, but that the same shall not be filed as a part of the Court records at the time of the divorce decree.

\* \* \* \* \* \*

12. On October 30, 1963, the Polk County District Court entered a Decree in the divorce action which stated in part (Pltf. Ex. B):

2. It is agreed between the parties to this action that the Stipulation of certain property rights, designated as Exhibit "A", shall be considered by the Court in its findings herein and in the entering of a decree, but that said Stipulation shall not be made a part of the record, except as either party, plaintiff or defendant, may determine to file the same in the future. The parties have entered into a Stipulation of certain property rights designated as Exhibit "A", subject to the approval of this Court, and the Court finds that the provisions of said Stipulation of Certain Property Rights should be and the same are hereby approved by this Court, except that on the basis of the evidence submitted to the Court and the arguments of counsel and the powers conferred on the Court in the provisions of Section 598.14 of the 1962 Code of Iowa, the Plaintiff should be decreed to be the owner of the following shares of stock in the following respective corporations in addition to the stock in said corporations now standing in the name of the Plaintiff:

| | |
|---|---|
| Pioneer Hi-Bred Corn Company of Illinois | 135 shares |
| Pioneer Corn Company, Inc. (an Indiana corporation) | 48 shares |
| Pioneer Hi-Bred Corn Company (an Iowa corporation) | 255 shares |
| Pioneer Hi-Bred Corn Company of Canada Limited | 500 shares |

In connection with said finding the Court further finds that the Plaintiff is entitled to receive, in addition to the dividends already received by plaintiff during the year 1963, the sum of Ten Thousand One Hundred Sixty-two Dollars ($10,162.00) as dividends paid during the year 1963 on stock in the aforementioned companies, Defendant having been deemed to have received said dividends for the benefit of the Plaintiff during 1963 but that the Plaintiff should be required to report said dividends as her income during 1963 for income tax purposes.

3. The material allegations of the petition of Plaintiff are supported by competent evidence and the Plaintiff is entitled to an absolute decree of divorce but is not entitled to any allowance of alimony nor is she granted any alimony, the Stipulation of Certain Property Rights being a property settlement in full and final settlement and satisfaction of all claims and demands and in lieu of alimony or for any other provision for her support and maintenance and has fully discharged the Defendant from all such claims and demands except as provided in said Stipulation of Certain Property Rights, and except as this Court has found the Plaintiff to be entitled to under Section 598.14 of the 1962 Code of Iowa.

It is therefore ordered, adjudged and decreed that the bonds of matrimony heretofore existing between the

parties hereto should be and the same are hereby severed, dissolved, and held for naught, and that the Plaintiff, Florence K. Wallace be and she is hereby granted an absolute decree of divorce from the Defendant, Henry B. Wallace.

It is further ordered, adjudged and decreed that the Stipulation of Certain Property Rights be and the same is hereby approved by the Court and that the division of the real and personal property and the property rights therein provided and set out is hereby approved and confirmed and that the Plaintiff not be entitled to any allowance of alimony and that no alimony be granted to the Plaintiff, the Plaintiff having accepted the provisions of the Stipulation of Certain Property Rights in full and final settlement and satisfaction of all claims and demands and in lieu of alimony or for any other provision for her support and maintenance, and it is further ordered, adjudged and decreed that the Defendant is discharged from all such claims and demands except as expressly provided in such Stipulation and except as hereinafter set forth.

\* .\* \* \* \* .\*

It is further ordered, adjudged and decreed that pursuant to the provisions of Section 598.14 of the 1962 Code of Iowa the Court decrees that the Plaintiff shall have as her own property in addition to the shares of stock now standing in the Plaintiff's own name in each of the following four corporations the following additional shares of stock which shall be forthwith transferred on the books of said corporations from the name of the Defendant to the name of the Plaintiff:

| | |
|---|---|
| Pioneer Hi-Bred Corn Company of Illinois | 135 shares |
| Pioneer Corn Company, Inc. (an Indiana corporation) | 48 shares |
| Pioneer Hi-Bred Corn Company (an Iowa corporation) | 255 shares |
| Pioneer Hi-Bred Corn Company of Canada Limited | 500 shares |

It is further ordered, adjudged and decreed that the Defendant shall pay over to the Plaintiff the sum of Ten Thousand One Hundred Sixty-two Dollars ($10,162.00) representing dividends received by the Defendant from stock held in the aforementioned companies by the Defendant for the benefit of the Plaintiff during 1963, provided, however, that the Plaintiff shall report the same as her income for Federal and State income tax purposes received during 1963.

It is further ordered, adjudged and decreed that the Plaintiff shall have the care, control and custody of the minor children of the parties and that prior to January 1, 1964 the Court shall determine the rights of the Defendant for visitation upon application of the Defendant with notice to Plaintiff.

It is further ordered, adjudged and decreed that all restraining orders and attachments heretofore entered or made herein shall be and the same are dissolved, released and discharged.

It is further ordered, adjudged and decreed that the Court shall reserve for later hearing the application for the Defendant for creation of trusts for all custodial stock held in the Defendant's name as custodian for any minor child or for the minor children of the parties.

It is further ordered, adjudged and decreed that the Court retains jurisdiction of the subject matter and of the parties for purposes of the enforce-

ment of the terms of the Stipulation of Certain Property Rights and the terms and provisions of this Decree.

\* \* \* \* \* \*

13. The selling price on November 7, 1963 of the stock transferred pursuant to the divorce decree was $158,486.39 (Def. Ex. 1). The schedules below reflect the total number of shares of stock owned by plaintiff in the four corporations, the dates of acquisition, the transferor of the stock and its basis (Def. Ex. 3):*

| Date Purchased or Acquired | | Number of Shares | Total Held to date | Cost | Cost to Date |
|---|---|---|---|---|---|
| 12-18-36 | Rec'd. from Ilo B. Wallace | 2 | 2 | 143.28 | 143.28 |
| 4-23-37 | Stock Subsc. | .8 | 2.8 | 80.00 | 223.28 |
| 4-23-38 | Stock Subsc. & Issued | 1.12 | 3.92 | 112.00 | 335.28 |
| 12-21-38 | Rec'd. from Ilo B. Wallace | 10 | 13.92 | 855.30 | 1,190.58 |
| 12-23-46 | Rec'd. from Ilo B.Wallace | 10 | 23.92 | 855.30 | 2,045.88 |
| 12-23-47 | Rec'd. from Ilo B.Wallace | 5 | 28.92 | 427.65 | 2,473.53 |
| 12-14-48 | Rec'd. from Ilo B.Wallace | 5 | 33.92 | 427.65 | 2,901.18 |
| 12-21-48 | Rec'd. from Ilo B.Wallace | 5 | 38.92 | 427.65 | 3,328.83 |
| 12-30-49 | Rec'd. from Ilo B.Wallace | 2 | 40.92 | 171.06 | 3,499.89 |
| 12-9-50 | Rec'd. from Ilo E.Wallace | 2 | 42.92 | 171.06 | 3,670.95 |
| 9-26-51 | Stock Issued from Surplus | 369 | 411.2 | -0- | 3,670.95 |
| 12-6-51 | Rec'd. from Ilo B.Wallace | 30 | 441.2 | 248.40 | 3,919.35 |
| 12-19-51 | Sold .2 Sh. to James W. Wallace | (.2) | 441 | (1.78) | 3,917.57 |
| 12-12-52 | Rec'd. from Ilo B.Wallace | 10 | 451 | 82.80 | 4,000.37 |
| 11-25-53 | Rec'd. from Ilo B.Wallace | 22 | 473 | 182.16 | 4,182.53 |
| 12-3-54 | Rec'd. from Ilo.B.Wallace | 1 | 474 | 8.28 | 4,190.81 |
| 12-1-55 | Rec'd. from Ilo E.Wallace | 1 | 474 | 8.28 | 4,190.81 |
| 12-1-55 | Rec'd. from Ilo B.Wallace | 16 | 490 | 132.48 | 4,323.29 |
| 5-16-56 | Rec'd. from Ilo E.Wallace | 12 | 502 | 99.36 | 4,422.65 |
| 4-25-57 | Rec'd. from Ilo B.Wallace | 12 | 514 | 99.36 | 4,522.01 |
| 4-13-59 | Rec'd. from Ilo E.Wallace | 10 | 524 | 82.80 | 4,604.81 |
| 11-4-63 | Rec'd. from Ilo B.Wallace | 9 | 533 | 74.52 | 4,679.33 |

Cost per share to here $8.78

| | | | | | |
|---|---|---|---|---|---|
| 11-5-63 | Tfr. to Florence D. Wallace | (255) | 278 | (2238.90) | 2,440.43 |
| 11-19-63 | Tfr. to Orto & Co. | (278) | -0- | (2440.43) | -0- |

### Pioneer Hi-Bred Corn Company of Illinois

| Date Purchased or Acquired | | Number of Shares | Total Held to Date | Cost | Cost to Date |
|---|---|---|---|---|---|
| 5-16-38 | Purchase | 1 | 1 | 100.00 | 100.00 |
| 6-16-41 | 100% Stock Div. | 2 | 3 | - | 100.00 |
| 6-14-46 | Rec'd. from Ilo B. Wallace | 20 | 23 | 1,000.00 | 1,100.00 |
| 12-28-49 | Rec'd. from Ilo B. Wallace | 4 | 27 | 200.00 | 1,300.00 |
| 12-12-50 | Rec'd. from Ilo B. Wallace | 3 | 30 | 150.00 | 1,450.00 |
| 11-3-52 | Rec'd. from Ilo B. Wallace | 2 | 32 | 100.00 | 1,550.00 |
| 12-3-54 | Rec'd. from Ilo B. Wallace | 3 | 35 | 150.00 | 1,700.00 |
| 6-19-56 | 900% Stock Div. | 315 | 350 | -0- | 1,700.00 |
| 5-12-58 | Rec'd. from Ilo B. Wallace | 35 | 385 | 175.00 | 1,875.00 |
| 5-9-61 | Rec'd. from Ilo B. Wallace | 28 | 413 | 140.00 | 2,015.00 |
| 5-31-60 | Rec'd. from Ilo B. Wallace | 20 | 433 | 100.00 | 2,115.00 |

Cost $4.88 per share to here

| | | | | | |
|---|---|---|---|---|---|
| 11-7-63 | Tfr. to Florence K.Wallace | (135) | 298 | (658.80) | 1,456.20 |
| 11-20-63 | Tfr. to Orto & Co. | (298) | -0- | (1,456.20) | -- |

---

*The name of the company involved in the above listed transactions is Pioneer Hi-Bred Corn Company (an Iowa corporation).

### Pioneer Corn Company, Inc. (an Indiana corporation)

| Date Purchased or Acquired | | Number of Shares | Total Held to Date | Cost | Cost to Date |
|---|---|---|---|---|---|
| 1-4-38 | Purchase ($100.00 Par Value) | .19 | .19 | 19.00 | 19.00 |
| 5-29-41 | 100% Stock Dividend | .19 | .38 | -0- | 19.00 |
| 5-21-46 | 400% Stock Dividend | 1.52 | 1.90 | -0- | 19.00 |
| 12-18-46 | Rec'd. from Ilo B. Wallace | 10 | 11.90 | 100.00 | 119.00 |
| 3-31-51 | Rec'd. from Eastern Co.Merger | 1.03 | 12.93 | 85.58 | 204.58 |
| 5-17-51 | Rec'd. from Dale Porter | .07 | 13 | 27.99 | 232.57 |
| 11-3-52 | Rec'd. from Ilo B. Wallace | 3 | 16 | 64.80 | 297.37 |
| 12-6-54 | Rec'd. from Ilo B. Wallace | 3 | 19 | 64.80 | 362.17 |
| 5-2-55 | Stock Davidend 5 for 1 | 95 | 114 | -0- | 362.17 |
| 5-28-60 | Rec'd. from Ilo B. Wallace | 4 | 118 | 14.40 | 377.57 |

Cost $3.20 per share to here

| Date | | Number of Shares | Total Held | Cost | Cost to Date |
|---|---|---|---|---|---|
| 11-8-63 | Tfr. to Florence K. Wallace | (48) | 70 | (153.60) | 223.97 |
| 11-22-63 | Tfr. to Orto & Co. | (70) | -0- | (223.97) | -0- |

### Pioneer Hi-Bred Corn Company of Canada

| Date Purchased or Acquired | | Number of Shares | Total Held to Date | Cost | Cost to Date |
|---|---|---|---|---|---|
| 5-9-57 | Tfr. fr. Pioneer of Iowa | 9.9 | 9.9 | -0- | -0- |
| 8-8-57 | From Script Statement | .2 | 10.1 | -0- | -0- |
| 9-4-58 | Tfr. to Pioneer of Canada | (10.1) | -0- | -0- | -0- |
| 9-4-58 | Rec'd.from Pioneer of Canada | 1010 | 1010 | -0- | -0- |
| 7-5-62 | Rec'd. from Ilo B. Wallace | 250 | 1260 | -0- | -0- |
| 11-8-63 | Tfr. to Florence K.Wallace | (500) | 760 | -0- | -0- |
| 11-21-63 | Tfr. to Orto & Co. | (510) | 250 | -0- | -0- |

[A1315]

## CONCLUSIONS OF LAW

1. The complaint raises five different issues upon which relief is sought. Two of these, one relating to a dependency exemption and the second relating to the deductibility of accounting fees of plaintiff's former spouse paid by plaintiff pursuant to the divorce decree, have been conceded by plaintiff. This leaves for decision three issues: the medical expense deduction for a portion of the cost of heating and air-conditioning equipment, the taxability to plaintiff of dividends paid to his former spouse pursuant to the divorce decree, and the tax effect to plaintiff resulting from the transfer of stock to his former spouse pursuant to the divorce decree.

### Medical Expense Deduction

■ 2. It is clear under Section 213 of the Internal Revenue Code that a deduction is allowed for expenditures made for the medical care of the taxpayer, with certain limitations. It is also clear that even a capital expenditure in the nature of a permanent improvement to real estate can constitute a deductible medical expense if said expenditure is incurred primarily to alleviate an illness, but the deduction is limited to that portion of the expenditure which does not increase the fair market value of the property. Treasury Regulation 1.213–1(e) (iii); Oliver v. Commissioner, 364 F.2d 575 (C.A. 8th); Riach v. Frank, 302 F.2d 374 (C.A. 9th); Gerard v. Commissioner, 37 T.C. 826; Seymour v. Commissioner, 14 T.C. 1111.

■ 3. It is fundamental that the determination of the Commissioner of Internal Revenue is presumptively correct, and the burden is on the taxpayer to show that it is erroneous. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; Northern Natural Gas Co. v. O'Mally, 277 F.2d 128 (C.A. 8th). The Commissioner of Internal Revenue has determined that the plaintiff in the present case was not entitled to the medi-

cal deduction of $3,946.12, which he is claiming.

4. With regard to the expenditure of $3,946.12, set forth in Findings of Fact, paragraph 9, the only evidence that the plaintiff has offered with regard to each item listed in that paragraph which indicates that the expenditure was made for medical purposes, is with respect to the air-conditioning unit and the electrostatic air filter. This was done by the introduction into evidence of a letter from Dr. Joel D. Tiegland. However, the amount expended on these two items is only $1,744.55. Accordingly, any medical deduction that the plaintiff is entitled to in the present case will be limited to that amount.

■ 5. The plaintiff introduced no evidence at trial as to whether the electro-static air filter nor the air-conditioning unit were permanent improvements. He also introduced no evidence at trial with regard to whether these improvements increased the value of the property to which these were attached. Accordingly, the plaintiff has not met his burden of proof with regard to whether the amount expended on the air-conditioning unit and the electro-static air filter come within the purview of Section 1.213–1(e) (iii). Therefore, no deduction pursuant to Section 213 of the Code can be given to plaintiff for those expenditures.

*Dividend Income*

■ 6. Pursuant to the divorce decree plaintiff transferred to his former spouse dividends in the amount of $10,162.00 which he received during the year 1963. These dividends had been paid on the stock which the plaintiff owned and was required by the divorce decree to transfer to his former spouse. It is well established that the person who earns income is liable for the tax on it. Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731. And the person who owns securities is liable for the tax on the dividends. Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75;

Hyman v. Nunan, 143 F.2d 425 (C.A. 2d). Moreover, when dividends are declared but unpaid at the time that securities are transferred, and are subsequently paid to the transferee, the dividends are taxable to the transferor. Estate of Smith v. Commissioner, 292 F.2d 478 (C.A. 3d); Estate of Holmes v. Commissioner, 1 T.C. 508.

■■ 7. Plaintiff's contention that the dividends were held in trust must be rejected since there is no evidence that either the stock or the dividends were held in trust. The stock was owned by plaintiff at the time the dividends were paid by the corporations and the dividends were paid to him as the owner of the stock. Consequently, the dividends are taxable to him. The tax liability on income from capital is imposed upon the person who owns the capital. Doll v. Commissioner, 149 F.2d 239 (C.A. 8th).

■ 8. Plaintiff's contention that he should receive a deduction pursuant to Section 1341 of the Code because it was subsequently discovered that he did not have an unrestricted right to the dividend income must also be rejected. In the present case the plaintiff clearly had an unrestricted right to the income. He used that income in order to satisfy marital claims which his estranged wife had against him.

■ 9. Also, the fact that the divorce court decreed that Florence K. Wallace should pay the income taxes due on the dividends in question is of no consequence in this case. This case deals with the federal income tax law and the power of Congress to tax is not limited by state control. Doll v. Commissioner, supra. Under the federal tax law the person liable for the income tax on the dividends in question was the taxpayer. Helvering v. Horst, supra.

*The Davis Issue*

10. The stock transfer issue is governed by the principles enunciated by the Supreme Court in United States v. Davis, 370 U.S. 65, 82 S.Ct. 1190, 8

L.Ed.2d 335. In *Davis* the taxpayer and his wife entered into a property settlement and separation agreement which provided for support payments to the wife and a minor-child and the transfer of personal property to the wife. The property transferred to the wife was owned by the taxpayer subject to the wife's marital rights under Delaware law. The husband agreed to transfer to his wife certain stock and the wife agreed to accept the stock in satisfaction of any and all claims and rights against the husband, including dower and all rights under the laws of testacy and intestacy. The agreement was then incorporated into the divorce decree. The question presented to the Supreme Court for decision was whether the difference between the fair market value of the stock at the time of transfer and the basis of the stock constituted taxable income to the husband. This required a two-step analysis—first, whether the transaction was a taxable event; and second, if so, how much taxable gain resulted.

11. For many years prior to the Supreme Court's decision in *Davis*, it was well-established that a property settlement in a common law state constituted a taxable event requiring the realization of capital gains on property transferred by a husband to his former spouse. Commissioner v. Mesta, 123 F.2d 986 (C.A. 3d) (Pennsylvania); Commissioner v. Halliwell, 131 F.2d 642 (C.A. 2d) (Connecticut); Hall v. Commissioner, 9 T.C. 53 (Florida); Patino v. Commissioner, 13 T.C. 816 (New York); Estate of Stouffer v. Commissioner, 30 T.C. 1244 (Ohio), reversed on another issue, 279 F.2d 27 (C.A. 6th); King v. Commissioner, 31 T.C. 108 (Oregon); Marshman v. Commissioner, 31 T.C. 269 (Ohio), reversed on another issue, 279 F.2d 27 (C.A. 6th). These decisions not only held that the transfer was a taxable event, but also that the amount of the gain was ascertainable since the marital rights released by the wife were equal to the fair market value of the property received on the date of transfer.

12. In Marshman v. Commissioner 279 F.2d 27 (C.A. 6th) and in Davis v United States, 287 F.2d 168 (Ct.Cl.), the Court of Appeals for the Sixth Circuit and the Court of Claims, respectively, held that the gain realized on the transfer of property was not ascertainable. Neither of these decisions held, however, that the transfer was not a taxable event. It is apparent, therefore, that the primary reason for the granting of certiorari in *Davis* was not to resolve the question of whether the event was taxable, since the courts had uniformly agreed that it was a taxable event, but rather to determine whether the amount of the gain was ascertainable.

13. Despite the uniformity of the decisions to the contrary the taxpayer in *Davis* claimed that the transaction did not result in a taxable event. He argued that the transfer was comparable to a non-taxable division of property between two co-owners and that there should be no distinction between a wife's property rights in a common law jurisdiction vis-a-vis a community property jurisdiction. The Court rejected both these arguments, holding that under Delaware law the wife's inchoate rights do not even remotely reach the dignity of co-ownership since (1) the wife has no interest, active or passive, over the management or disposition of her husband's personal property, (2) her rights are not descendable, (3) she must survive her husband to share in his intestate estate, and (4) upon dissolution of the marriage she shares in the property only to the extent that the court deems "reasonable." Criteria such as the wife's financial condition, her needs in relation to her accustomed station in life, her age and health, the number of children and their ages, and the earning capacity of the husband must be considered in determining what is "reasonable." After noting the possible logic of taxpayer's argument that the transaction should be considered a non-taxable division of property, the Court held that Delaware law only placed a burden on the husband's property rather than making

his wife a part owner, that the wife's rights did not differ significantly from the husband's obligations of support and alimony, and that these obligations were more like a personal liability of the husband than a property interest of the wife. In holding that the transaction constituted a taxable event, the Court relied upon the prior consistent administrative practice and unanimous views of the lower courts.

14. In the case at bar, the parties entered into a stipulation of certain property rights, alimony, custody and support payments "in the event that upon trial of the * * * cause a divorce is granted by the Court dissolving the marriage between the parties * * * and subject to the approval and decree of the Court." The stipulation of property rights left for decision by the Court the question of whether the wife should be awarded shares of stock in certain companies owned by the plaintiff. In entering the divorce decree, the Court pursuant to the powers conferred by Section 598.14 of the 1962 Code of Iowa held that certain stock having a fair market value of $158,486.39, and having a basis to plaintiff of $3,051.30 should be transferred to the wife.

 15. Under Iowa law, plaintiff's former spouse had no interest, active or passive, over the management or disposition of plaintiff's personal property; her rights were not descendable; she must survive her husband to share in his intestate estate; and upon entry of the divorce decree she may share in the property only to such extent "as shall be right." A property settlement in Iowa is not binding on the Court. Under the provisions of Section 598.14 the Court can alter any property settlement made between the parties. Messer v. Messer, 238 Iowa 783, 28 N.W.2d 329; In re Yoss' Estate, 237 Iowa 1092, 24 N.W.2d 399; and Knipfer v. Knipfer, 259 Iowa 347, 144 N.W.2d 140. A wife is entitled only to such share of the husband's property as is reasonable under the circumstances. Jolly v. Jolly, 1 Iowa 9; Donovan v. Donovan, 231 Iowa 14,

300 N.W. 656. And in requiring the husband to transfer property to the wife, an Iowa court must consider the sex, age, health of the parties, future prospects of each, duration of marriage, indebtedness of each or both, children involved, and other facts helpful in reaching an equitable decision. Cooper v. Cooper, 259 Iowa 277, 144 N.W.2d 146; Arnold v. Arnold, 257 Iowa 429, 133 N.W. 2d 53; and Bowman v. Bowman, 259 Iowa 820, 146 N.W.2d 333. Iowa, as Delaware, is a common law jurisdiction, and it is clear that for all relevant purposes the facts of this case are identical to those of *Davis*. The inchoate rights of the wife in her husband's property do not even remotely reach the dignity of co-ownership, but rather partake more of a personal liability of the husband than a property right in the wife. The wife's right to succession and to a reasonable share of the property do not differ significantly from the husband's obligations of support and alimony. Consequently, it is the decision of this Court that the transfer of stock constituted a taxable transfer of property.

16. The Court has carefully considered the plaintiff's argument, for which no precedent has been cited, that *Davis* is distinguishable from the case at bar because the property in *Davis* was transferred pursuant to a stipulation between the parties, while the property in the instant case was transferred pursuant to a divorce decree. This contention is untenable for several reasons. First, the Court in *Davis* stated that its decision turned on whether there was a division of property. In order for there to be a division of property, the Court concluded that the wife's rights in the property had to reach "the dignity of co-ownership." The Court held that the wife's right did not reach "the dignity of co-ownership" and, therefore, there was no division of property. The Court then stated that if there was no division of property there must be a transfer of property. The next question facing the Court was how the transfer was to be categorized. The Court in *Davis* stated

explicitly that the transfer could not be considered a gift, and therefore the transfer must be considered a transfer of property in exchange for the wife's marital rights. If the Court in *Davis* concluded that the transfer was not a gift where the parties amicably settled their dispute by a private settlement, the Court in this case certainly cannot conclude that a gift was made where the transfer was made by court decree. Secondly, the Court's decision in *Davis* was based on its examination of the Delaware statute which would have been used to transfer a portion of the husband's property to the wife if the parties had not agreed to a settlement. Therefore, it would be reasonable to assume that if the Court in *Davis* concluded that the fact that the transfer was made by a court was relevant to whether or not the transfer was taxable, it would have discussed this in its opinion since that opinion is based on an examination of a statute under which a Delaware court would make such a transfer. There is no such discussion in the *Davis* opinion. Finally, an adoption of plaintiff's position that the tax effect should be different depending upon whether property is transferred pursuant to a stipulation or pursuant to a court decree would achieve the unconscionable result of penalizing those taxpayers who voluntarily settle their differences. This would discourage stipulations concerning property rights and would proliferate the number of cases in which the divorce court must make the always difficult determinations of property rights. Accordingly, the Court concludes that the argument set forth by the plaintiff with regard to how the property was transferred is irrelevant and that the transfer is taxable pursuant to *Davis*. This holding is supported by the decisions of the only other courts which have considered this argument. Pulliam v. Commissioner, 10 Cir., 329 F.2d 97; Stephens v. Commissioner, 38 T.C. 345; United States v. Zimmers, decided January 29, 1963 (63–1 U.S.T.C., par. 9269); and Commissioner v. Halliwell, 131 F.2d 642 (C.A. 2d).

17. Plaintiff places great reliance upon Collins v. Commissioner, (C.A. 10th), 412 F.2d 211, decided June 18, 1969. *Collins* holds that under Oklahoma law a transfer of stock from husband to wife pursuant to a stipulation (incorporated into a divorce decree) is not a taxable transfer. In so holding, the Tenth Circuit relied upon the decision of the Supreme Court of Oklahoma in Collins v. Oklahoma State Tax Commission, 446 P.2d 290, which held that under 12 Okla.Stat.Ann. Section 1278, the wife had an interest in the husband's property which was similar in conception to community property and which may be regarded as held by a species of common ownership. 446 P.2d at 295. This Court believes that *Collins* was incorrectly decided, or at least distinguishable.

18. The issue to be determined in connection with the transfer of stock in a divorce proceeding is whether the transfer constitutes a sale or exchange of the stock within the meaning of Sections 1001 and 1002 of the Internal Revenue Code. It is undisputed that this is a question of federal income tax law. The Supreme Court in *Davis* instructs us that in deciding this federal question we must look to state law to determine whether the wife possesses meaningful attributes of ownership with respect to the property transferred or whether the wife's rights are merely inchoate. These attributes of ownership are in sum and effect federal criteria. While we must look to state law to determine whether attributes of ownership exist, we must also disregard labels or tags placed upon the wife's rights by the state for non-federal purposes. This is not to say, of course, that the criteria relevant to the *Davis* decision are exclusive or applicable as a mechanical test of tax liability. The issue must always be whether a transfer of property more nearly resembles a division by co-owners or a transfer in exchange for an independent legal obligation. Relevant to this determination is

the presence or absence of significant meaningful attributes of ownership arising under state law on the part of the wife. When, as in *Davis*, such attributes are not present or preponderant as a matter of state law, a division of property by co-owners is not a permissible federal result.

19. In *Collins*, the Tenth Circuit relied for federal purposes upon the label "vested" which the Supreme Court of Oklahoma placed upon the nature of the wife's rights under state law for state purposes. Thus, it was concluded for federal income tax purposes that the wife had "vested rights" in the property despite the fact that her rights under the state statute accrued only when the divorce action was filed. The wife need not have exercised the rights. She could not manage or dispose of the property. Her rights were not descendable. She could share in the intestate estate only by surviving her husband. The state divorce court must make such division of the property "as may be just and reasonable." These rights, labeled "vested" by the Oklahoma Supreme Court and the Tenth Circuit, are the same marital rights denominated "inchoate" by the Supreme Court in *Davis*. Accordingly, it seems apparent that the *Collins* court applied an erroneous standard for federal tax purposes under the *Davis* rationale. It must also be noted that *Collins* stands uniquely alone, among the several courts which have considered the issue, as the only decision in a common law property jurisdiction which holds that a wife has an interest similar to a community property interest in her husband's property and that this interest is a "species of common ownership."

20. Even if one were to assume arguendo that the decision in *Collins* is correct, the present case is distinguishable. The Tenth Circuit in holding that there was not a transfer of property but a division of property relied upon the Oklahoma Supreme Court's decision. The Oklahoma Supreme Court found as a matter of law that in Oklahoma the wife shared in her husband's property upon divorce irrespective of her needs. Therefore, the Supreme Court of Oklahoma found as a matter of state property law that one of the attributes of ownership set forth in *Davis* was present, i. e., that the wife took irrespective of her needs. The Supreme Court of Oklahoma then concluded that the wife's interest in her husband's property was akin to that of a co-owner under state law, and that there was no taxable transfer but rather a division of the property. This is not the law in Iowa.

21. The plaintiff argues that in the present case, unlike *Davis*, there was no taxable exchange of property for marital rights because the wife had surrendered her marital rights by private agreement prior to the divorce decree. The property was transferred pursuant to Section 598.14 of the 1962 Code of Iowa. Any interest which a wife has in her husband's property under this provision of the Iowa law arises out of the marital relationship. Accordingly, any transfer by a court pursuant to this section must be in exchange and in satisfaction of the wife's marital rights. Also, it should be noted that a divorce court in Iowa is not bound by a private agreement for the settlement of property. It follows that what the wife professed to surrender in a private agreement is of no consequence, since a court makes its own determination with regard to what the parties should receive in a property settlement. Finally, it is worthy of mention that the stipulation of property rights provides for the satisfaction of marital rights according to the "terms and conditions set out by this Agreement and * * * subject to the decree of the Court." One such term is that the Court shall make disposition of the property here in dispute (Pltf. Ex. B). The Court's decree provided for satisfaction of all claims by the Stipulation "except as this Court has found the Plaintiff to be entitled to under Section 598.14 of the 1962 Code of Iowa." (Pltf. Ex. B). Thus, it is far from clear that the state court's disposition of the property was unrelated to the release of marital claims. A contrary

inference is at least equally reasonable under the evidence.

22. It is, therefore, the decision of this Court that the transfer by the plaintiff of the stock to his former spouse pursuant to a divorce decree was a taxable event and that the Commissioner of Internal Revenue properly determined that the plaintiff was taxable upon the difference between his basis in the stock and the selling price of the stock on the date of transfer. In arriving at this decision, the Court relies not only upon the decision of the Supreme Court in *Davis* but also upon the unanimous opinions, with the exception only of Collins v. Commissioner, of all courts which have considered this question.

Judgment will be entered for the defendant at plaintiff's costs.

It is ordered that the foregoing shall constitute the Findings of Fact, Conclusions of Law and Order for Judgment in this case. Rule 52(a) of the Federal Rules of Civil Procedure.