**Henry B. and Betty J. WALLACE, Appellants,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 20265.**

United States Court of Appeals, Eighth Circuit.

March 19, 1971.

David W. Belin and Jeffrey E. Lamson, Herrick, Langdon, Belin & Harris, Des Moines, Iowa, for appellants.

Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Elmer J. Kelsey, Richard W. Perkins, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before MATTHES, Chief Judge, and LAY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

Taxpayer Henry B. Wallace[1] brought this action under 28 U.S.C. § 1346(a)(1), seeking a refund of $55,282.86 for federal income taxes, and interest thereon, which he alleged were erroneously assessed and collected for the 1963 taxable year. The questions presented to the district court and on this appeal relate to expenditures, payments and transfers of property made by the taxpayer in connection with divorce proceedings instituted against him by his former wife in an Iowa state court. The federal district court, Judge Hanson, entered judgment for the government, rejecting each of the taxpayer's claims. Wallace v. United States, 309 F.Supp. 748 (S.D. Iowa 1970). Taxpayer Wallace prosecutes this appeal, and we affirm.

In November of 1962, appellant's former wife initiated divorce proceedings against him in the district court for Polk County, Iowa, and obtained from the divorce court an order restraining the appellant "from disposing of any personal property" of the appellant, his former wife, or their children, during the pendency of the divorce action. In October of 1963, appellant and his former wife entered into a property settlement agreement, subject to the approval of the divorce court. The agreement generally provided that Wallace's former wife would retain her own real and personal property and obtain title to the "homestead". The agreement further provided that appellant's wife would receive no alimony, and specifically excluded any division of capital stock in certain related Pioneer Hi-Bred Corn Companies (hereinafter Pioneer), leaving disposition of this stock subject to the order of the Iowa state court.

On October 30, 1963, the day following execution of this agreement, the state court entered its divorce decree in which it approved the property settlement and granted custody of the minor children to the plaintiff-wife. The divorce decree also ordered 938 shares of stock in the Pioneer corporations, a portion of the shares previously given to Wallace by his parents, to be transferred to his former wife. The court further ordered the appellant to pay his former wife $10,162, the amount of dividends already received by appellant during 1963 on these shares. The court declared that appellant's former wife should report the dividends as her income for federal tax purposes. The divorce court recognized the property settlement and its own orders for the transfer of stock and dividends as constituting a final settlement of all claims by appellant's former spouse for support and maintenance.

On this appeal, taxpayer Wallace raises the following issues: (1) whether certain expenditures made by Wallace to install a central air conditioning system with an electrostatic filter in the family home entitled the taxpayer to a medical expense deduction; (2) whether Wallace realized a taxable long-term capital gain upon the transfer of the stock to his former wife in compliance with the divorce decree; and (3) whether Wallace was liable for income taxes upon dividends paid to him in 1963 with respect to shares of stock which were, subsequent to the receipt of these dividends, transferred to his former wife pursuant to the divorce decree. We consider these questions seriatim.

## I. THE MEDICAL EXPENSE DEDUCTION

Taxpayer Wallace spent $4,946 in response to an order of the divorce court

---

1. Henry B. Wallace's present wife, Betty J. Wallace, is also a party to these proceedings because a joint return was filed for the taxable year in question.

to install a new heating-air conditioning system, including humidity controls and air filters, to alleviate his son's asthmatic condition. Appellant subsequently claimed $3,946 of that sum as a medical expense deduction under § 213 of the Internal Revenue Code. The government disallowed this claim.

██ While a capital expenditure of this nature for a permanent improvement to real estate may constitute a deductible medical expense if incurred primarily to alleviate an illness, only that portion of the expenditure which does not increase the fair market value of the property is eligible as a § 213 medical expense deduction. Treas.Reg. § 1.-213–1(e) (iii). See Oliver v. C.I.R., 364 F.2d 575, 758 (8th Cir. 1966); Riach v. Frank, 302 F.2d 374, 380 (9th Cir. 1962); Gerard v. Commissioner of Internal Revenue, 37 T.C. 826, 829–830 (1962).

In this case, appellant Wallace introduced no evidence with regard to whether these expenditures increased the value of the property to which they were attached and, if so, to what extent. The district court properly noted that a determination by the Commissioner of Internal Revenue is presumptively correct, and the burden is on the taxpayer to show that such a determination is erroneous. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933); Northern Natural Gas Co. v. O'Malley, 277 F.2d 128 (8th Cir. 1960). We agree with the district court that the taxpayer failed to offer the necessary proof to sustain his entitlement to a medical expense deduction for any part of this expenditure.

## II. CAPITAL GAIN ON TRANSFER OF STOCK

██ As we have already noted, the state court, in its divorce decree, directed the transfer of certain shares of stock from the taxpayer to his former wife. The stock carried a basis for federal tax purposes of $3,051 and a fair market value at the time of transfer of

$158,486. The Internal Revenue Service ruled that the transfer constituted a taxable event and assessed taxpayer Wallace for the income tax liability on this capital gain. In contesting this determination by the Internal Revenue Service, the taxpayer contended that (a) the transfer of property incident to the divorce proceedings constituted an equitable division of property between equitable co-owners, rather than transfer of property in exchange for the release of marital obligations; and (b) the order of the divorce court with regard to this stock, entered without any agreement of the parties, constituted a division of property between the parties rather than any "sale or exchange" under §§ 1001 and 1002 of the Internal Revenue Code of 1954.

The district court rejected the appellant's contentions on this issue, relying upon principles enunciated in United States v. Davis, 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962). There, the husband transferred shares of corporate stock to his former wife pursuant to a property settlement agreement executed prior to the entry of the divorce decree. The Supreme Court determined that the transfer constituted a taxable event subjecting the husband to a tax on the appreciated value of the property transferred. As in the instant case, the taxpayer in *Davis* contended that the transfer constituted a non-taxable division of property between co-owners. Justice Clark, speaking for the Court, commented:

> The taxpayer's analogy, however, stumbles on its own premise, for the inchoate rights granted a wife in her husband's property by the Delaware law do not even remotely reach the dignity of co-ownership. The wife has no interest—passive or active— over the management or disposition of her husband's personal property. Her rights are not descendable, and she must survive him to share in his intestate estate. * * *

> This is not to say it would be completely illogical to consider the shear-

ing off of the wife's rights in her husband's property as a division of that property, but we believe the contrary to be the more reasonable construction. [370 U.S. at 70, 82 S.Ct. at 1193]

■ The transfer of stock in the instant case was effected pursuant to state statutory authorization, Iowa Code § 598.14, which provides:

When a divorce is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right.

Subsequent changes may be made by it in these respects when circumstances render them expedient.

Section 598.14 is liberally construed with considerable discretion being lodged in the trial court to fashion divorce relief. Call v. Call, 250 Iowa 1175, 98 N.W.2d 335 (1959). A property settlement incident to a divorce action in Iowa is not binding on the court, and under the provisions of § 598.14, the court can alter any property settlement made between the parties. Knipfer v. Knipfer, 259 Iowa 347, 144 N.W.2d 140 (1966); Messer v. Messer, 238 Iowa 783, 28 N.W.2d 329 (1947). The power given a divorce court in Iowa under § 598.14 is very similar to the statutory power involved in Davis.[2]

The district court determined that Iowa law, like that of Delaware discussed in Davis, granted taxpayer Wallace's former spouse no interest, active or passive, in the latter's personal property prior to the entry of the divorce decree. Wallace, supra, 309 F.Supp. at 759. Appellant contends that the circumstances here are distinguishable from those in Davis, and relies upon Collins v. Commissioner of Internal Revenue, 412 F.2d 211 (10th Cir. 1969), for reversal.

In Collins, the court ruled that a transfer of corporate stock by a husband to his wife incident to their divorce proceedings did not constitute a taxable transfer under Oklahoma law. The Oklahoma Supreme Court had previously ruled in related litigation concerning the husband's state income tax liability that the taxpayer's wife possessed a species of common ownership in his property "similar in conception to community property of community property states." Collins v. Oklahoma Tax Commission, 446 P.2d 290, 295 (Okl.1968). The Tenth Circuit noted in Collins that the Oklahoma statute imposed a mandatory rather than permissive duty upon the state court to effect an equitable division of jointly held property. The court distinguished the circumstances before it from those presented in Davis, concluding that the wife's interest under Delaware law constituted only a burden on her husband's property rather than being a part owner thereof, whereas in Oklahoma the wife is made "a part owner thereof" by operation of the statute. Collins, supra, 412 F.2d at 212.

■ We think the district court properly determined that the rights of a wife in Iowa closely parallel those of a wife in Delaware, i.e., she possesses only inchoate rights in her husband's property. Wallace, supra, 309 F.Supp. at 759. The Supreme Court in Davis recognized that the substantive differences between community property and common law systems "may permit different tax treatment among the several States * * *." 370 U.S. at 71, 82 S.Ct. at 1193. We agree with the district court that Collins v. Commissioner of Internal Revenue, supra, 412 F.2d 211, is clearly distinguishable on its facts.

The cases cited by the appellant, Alberhasky v. Alberhasky, 250 Iowa 986, 97 N.W.2d 914 (1959); O'Brien v. O'Brien, 239 Iowa 1181, 34 N.W.2d 183

2. The statute, Del.Code Ann. 13 § 1531(a), provides:

"When a divorce shall be decreed for the aggression of the husband the complainant shall be restored to all her real estate, and allowed, out of her husband's real and personal estate, *such share as the court thinks reasonable* * * *." (Emphasis added.)

(1948), to the effect that the wife is a co-owner of property in Iowa are inapplicable here, since in each of those cases substantial evidence had been produced which established that the wife had contributed to the assets in question by her labor or earnings. No evidence of this nature has been introduced in the instant case.

Appellant also seeks to distinguish his situation from that of the taxpayer in *Davis* by construing language of the property settlement as providing for the relinquishment of his former wife's marital rights in consideration of her receipt of property other than the stock. Thus, he argues, the divorce decree produced a division of property rather than a taxable transfer between the husband and wife. The fallacy in this argument lies in its disregard of the decree as the primary factor accomplishing both a transfer of property and a simultaneous extinguishment of marital obligations between the parties to the divorce. We reject any such artificial distinction between this case and *Davis* resting upon subtleties in the mechanics by which a husband divests himself of appreciated property in favor of his wife. Here, as in *Davis*, the absence of any co-ownership interest by the wife in the transferred stock prior to the divorce action requires that this transaction be treated as a taxable event. The district court properly concluded that the rationale of United States v. Davis, *supra*, 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335, controls on this issue. See Swaim, 50 T.C. 302, aff'd, Swaim v. C.I.R., 417 F.2d 353 (6th Cir. 1969); Pulliam, 39 T.C. 883 (1963), aff'd, Pulliam v. C.I.R., 329 F.2d 97 (10th Cir.), cert. denied, 379 U.S. 836, 85 S.Ct. 72, 13 L.Ed.2d 44 (1964); 6 Mertens, Law of Federal Income Taxation § 37.48 (1968).

The Internal Revenue Service determined that dividends paid to taxpayer Wallace during 1963 with respect to the shares of stock subsequently ordered transferred to his former wife constituted taxable dividend income to the appellant for the 1963 taxable year. The district court rejected the taxpayer's theory that he received this income as a trustee for his former wife, concluding that appellant produced "no evidence that either the stock or the dividends were held in trust." 309 F.Supp. at 757. We think the district court clearly and adequately demonstrated that appellant Wallace was properly taxed for this dividend income, and we affirm for the reasons enunciated by the district court on this issue. 309 F.Supp. at 757.

Affirmed.