Frank O'Brien, Appellant, v. Stella F. O'Brien, Appellee.

No. 47309.

(Reported in 34 N. W. 2d 183)

October 19, 1948.

Pike, Sias, Butler & Hoxie, of Waterloo, for appellant.

W. L. Beecher, of Waterloo, for appellee.

Bliss, J.—Plaintiff, age fifty-seven, and defendant, age fifty-four, were married July 5, 1932. No children were born of the marriage. They lived together until in March 1945 when defendant brought a separate maintenance suit on the ground of inhuman treatment endangering her life. Plaintiff cross-petitioned for divorce on like grounds. After trial, the court on June 28, 1946 denied relief to both parties. Neither appealed. When the suit was begun the husband was enjoined from entering the home. This injunction was dissolved at the time of the decree in June 1946, but plaintiff never returned to his home where defendant lived. In June 1947 plaintiff commenced the present action for divorce, alleging inhuman treatment and

adultery by his wife. Defendant cross-petitioned for divorce on the grounds of inhuman treatment and desertion by her husband. On the trial, there was evidence that the defendant and one John H. Ackerman, age sixty-two, the divorced husband of a sister of plaintiff, had been consorting together considerably to plaintiff's knowledge. On the night of May 30, 1947 plaintiff saw the couple at a tavern and dance hall about midnight, and later he observed them in the kitchen of the home where his wife lived, having a late lunch, and later he saw the lights turned off. Plaintiff called two policemen and on entering the home and as they approached her bedroom door she arose from the bed and tried to close the door. When the three entered and turned on the lights they saw Ackerman in bed attired in a shirt only, and defendant wearing a nightgown. Ackerman pulled on his trousers and said, "Hello, Frank" to plaintiff, and the latter said, "Hello, John." Stella told Frank it was a "dirty, dirty, rotten trick." Stella and John were booked for disorderly conduct at the police station and later each defaulted a $15 bond.

The court in its decree stated: "The penchant of each of them to attend and to trip the light fantastic with other members of the opposite sex belies their sincerity concerning their marriage obligations, their age and their claimed state of health." An absolute divorce was granted plaintiff on the ground of defendant's adultery, and the court found that neither party had established any other charge against the other. The defendant held title to the home. As alimony, plaintiff was awarded a used 1939 Ford car worth a few hundred dollars, two $50 war bonds, and an undivided one-half interest in the residence property "subject to defendant's use thereof during her natural life or until she remarries." Defendant was charged with the obligation to pay all taxes and assessments before delinquency, and to keep the property insured and in repair.

Defendant has not appealed. The only question for determination is the fairness of the division of the real estate. The O'Briens bought the home in 1932 or 1933 for $300 plus a mortgage of $850 and taxes. Plaintiff paid $838, borrowing $250 from his mother and $388 on a life insurance policy, and

the balance was paid in monthly installments completed in 1943. By their joint efforts the place was much improved with the plaintiff doing a large part by his own labor. The place was replastered, a new furnace put in, a stairway, a bathroom downstairs, painting inside and out. When the property was first purchased each took a deed to an undivided one-half interest. Defendant worked for a time at $11 a week which was increased to $18. Plaintiff worked at the Rath packing plant for some time until laid off by a strike, and then began painting. He fell with a scaffold and was badly injured in August 1938, splitting both heel bones and suffering compressed fractures of some spinal vertebrae. He was bedfast at the Presbyterian Hospital at Waterloo and the Veterans Hospital at Des Moines for many months. His recovery was slow and is not complete. He also had a duodenal ulcer. While in the government hospital on April 3, 1939, and at a time when it was doubtful that he would live, he executed a deed to defendant to his half interest in the home, with the understanding that his wife would reconvey to him if he survived. On his recovery she refused to do this. The house was furnished out of their joint earnings. Plaintiff, in 1940, drew a nonservice connected government pension of $30 a month and $15 a month insurance and compensation for 240 weeks. All of these checks were turned over to his wife and she used the money for living expenses and payments on the house and mortgage.

The defendant has lived in the home since March 1945. She rents a lunchroom downstairs for $20 a month, and also keeps some roomers. An unmarried son by a former marriage lives with her. There was no testimony to the value of the home other than given by the parties. Plaintiff said he thought the house could be sold "for roughly seven or eight thousand dollars." Defendant testified that it needed much repair and "would be worth four or five thousand dollars."

Plaintiff is not in the best of health. During two years preceding the trial he was receiving a take-home pay of about $49 a week, earned by painting. Defendant testified to some ailments and that she was not able to do heavy work. Her doctor testified that he examined her in 1944 and in March 1947, and that she had a valvular heart murmur, and a thyroid

deficiency causing a low metabolism. She has three adult children—two sons and a daughter by an earlier marriage.

All of the property which these two people had at the time of the trial was accumulated by the efforts of both of them. He probably contributed more to the acquisition, in labor and money, than she. The property has increased substantially in value both from improvements and additions, and because of the general rise in the value of residence property. The home was free from encumbrance at the time of the decree. While the title to the whole of the home was in her at that time, the plaintiff was the equitable owner of at least an undivided half of it.

The court found she had committed a most culpable breach of the marriage relation. No allegation for which she asked relief was established. The decree takes from him the use of property belonging to him—an undivided one-half interest in the West half (W½) of Lot fifteen (15), Block twenty-eight (28), Railroad Addition to the city of Waterloo, Black Hawk County, Iowa—until the defendant dies or remarries. The plaintiff might never have any use of or benefit from the property. It is an inequitable award.

It is our judgment that the decree of the district court should stand as entered except that it should be modified so as to order, adjudge, and decree that plaintiff be awarded as alimony, as of the date of the original decree, the absolute right, title, and ownership of an undivided one-half interest in the above described property, free and clear of any and all liens and encumbrances of every nature and kind, and of any rights, claims or interest of defendant in, to or against said property. The decree is also modified to relieve the defendant from payment of taxes, insurance premiums, and for repairs on that part of the real estate awarded to plaintiff. The taxes on the appeal are taxed to defendant.

The judgment and decree is therefore affirmed and remanded for modification as herein directed.—Modified, affirmed and remanded.

All JUSTICES concur.