THOMAS W. LANNOM, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; THOMAS W. LANNOM and MARGARET E. DUFFY, a/k/a Margaret E. Lannom, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lannom v. Commissioner
Docket Nos. 6392-86; 6393-86; 6416-86.[1]
United States Tax Court
T.C. Memo 1989-299; 1989 Tax Ct. Memo LEXIS 311; 57 T.C.M. (CCH) 757; T.C.M. (RIA) 89299; June 20, 1989. Harold N. Schneebeck, Jr., and Robert R. Smith, for the petitioners. Thomas C. Morrison, for the respondent. BUCKLEY
MEMORANDUM OPINION BUCKLEY, Special Trial Judge: These cases were assigned pursuant to section 7443A(b) and Rules 180, 181 and 182. [2]
Respondent determined a deficiency in Thomas W. Lannom's Federal income tax in the amount of $ 72.05 for 1979. Respondent determined deficiencies in Thomas W. Lannom's and Margaret E. Duffy's joint Federal income taxes in the amounts of $ 9,245 and $ 7,283 for 1981 and 1982, respectively. References to petitioner hereafter refer to Thomas W. Lannom. The issues for decision are (1) whether petitioner properly recomputed his prior year investment tax credit in 1979 and (2) whether petitioner made deductible alimony payments in 1979, 1981, and 1982 pursuant to a divorce decree under section *313 215(a). Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in Grinnell, Iowa when they filed their petition. As a preliminary matter, we first resolve the investment tax credit issue. Respondent determined that in 1979 petitioner's prior year investment tax credit recapture equaled $ 855.39, not $ 783.34. Thus, respondent increased petitioner's tax by $ 72.05. Petitioner bears the burden of proof on this issue. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). We find that petitioner failed to meet his burden of proof. Petitioner did not present any evidence whatsoever at trial on this issue. Thus, we sustain respondent's determination in this regard. Petitioner and Allison Lannom, his former wife, were married on June 5, 1966. They had two children, Thomas K. Lannom and Douglas E. Lannom. Shortly after their marriage, petitioner joined the Navy as a pilot. He was discharged in 1971. After his discharge, petitioner and his family returned to Grinnell, Iowa. Petitioner purchased a home from the Ina G. Williams Trust, a trust established *314 for the benefit of his mother. After several short-lived employment quests, petitioner began to work in the family business. Specifically, petitioner managed a farm complex consisting of approximately 1,670 acres. Of this 1,670 acres, petitioner cultivated approximately 500 acres in corn, alfalfa, and grain for feeder cattle. Petitioner utilized the other 1,170 acres as pasture for feeder cattle. Petitioner employed two farm hands who lived on the farms. Petitioner received a salary with regular salary increases and bonuses. After the parties separated in 1976, petitioner ceased receiving salary increases and bonuses. During their time spent together in Grinnell as husband and wife, Allison Lannom did not work outside the home. Their standard of living was "comfortable middle class." They belonged to the Grinnell Country Club, entertained guests in their home, and vacationed at a Minnesota cabin owned by the family business. Petitioner and Allison Lannom separated in June of 1976. When they separated, petitioner's former wife remained in the family home with the children and petitioner moved to a farmhouse owned by the family business. After their separation, petitioner's *315 former wife worked as a secretary at Grinnell College while the children were in school. The bulk of the marital assets were inherited by petitioner or given to petitioner before the marriage. As a result, petitioner had interests in the family trust, the family's closely held companies, and stock. Both petitioner and his former wife agreed that their marriage had irretrievably broken down. They were unable, however, to agree as to child custody, support payments, property distribution, or valuation of certain assets. The Iowa District Court of Poweshiek County (trial court) made the following findings of fact and conclusions of law after a hearing. The trial court found that petitioner and his former wife's net worth equaled $ 620,879.75. After $ 5,750 in personal liabilities, a breakdown of their net worth into assets and corresponding values was as follows: Family home
-
$  23,854
Household goods
-
6,500
1973 Buick station wagon
-
1,575
1972 Datson 240Z
-
2,950
Miracle Equipment Co. stock
-
1,750
14.9 percent interest in The Lannom
Company, including an interest in
the Ina G. Williams Trust
-
260,000
25 percent interest in Landcroft
Farms, Inc.
-
325,000
Interest in Lannom Brothers
Partnership
-
5,000
*316 The trial court awarded child custody to petitioner's former wife, giving petitioner liberal visitation rights. Further, he was ordered to pay $ 50 per week child support. Petitioner was also ordered to pay his former wife $ 200 per month alimony for 2 years to terminate upon death or remarriage. Further, the trial court awarded petitioner's former wife a $ 100,000 amount which it classified as a property settlement, payable in 10 annual installments of $ 10,000 per payment, with 9 percent interest on the unpaid balance. Death of either party did not terminate the property settlement obligations. The trial court was silent as to remarriage. In order to secure payment of the $ 100,000, a lien was placed on petitioner's interest in the Lannom Brothers Partnership. The trial court also awarded petitioner's former wife the family home including an assumption of its liabilities, household goods and silverware, and a 1973 Buick station wagon, plus other personal possessions. Petitioner was awarded all stock in The Lannom Company, all stock in Lancroft Farms, Inc., his partnership interest in the Lannom Brothers Partnership, his interest in the Ina G. Williams Trust, the 1972 Datsun 240Z, *317 household goods in his possession, 500 shares of Miracle Equipment Company stock, plus other personal possessions. The trial court dissolved the marriage on December 12, 1979. Petitioner's former wife appealed the trial court's economic provisions and petitioner cross-appealed. Petitioner's former wife contended that the property and alimony awards were unfairly low and petitioner contended that they were unfairly high. The Court of Appeals of Iowa (court of appeals) after a review de novo affirmed the trial court's decision with certain modifications in April of 1981. The court of appeals affirmed the valuation of the various assets and the distribution between the parties. It held, however, that the division of assets unfairly favored petitioner, and in order to provide "a more equitable distribution of assets," increased the $ 100,000 property settlement to $ 180,000, payable $ 15,000 per year for 12 years with interest accruing at 9 percent from the date of the trial court's decree. It also increased alimony payments to $ 400 per month per year for 5 years rather than $ 200 per month for 2 years. Pursuant to the trial court's decree, petitioner paid $ 10,000 to his former *318 wife on December 1, 1979, and $ 10,000 plus $ 8,100 interest on December 1, 1980. On December 1, 1981, pursuant to the court of appeal's modifications, petitioner paid $ 15,000 plus $ 13,050 interest. On December 1, 1982, petitioner paid $ 15,000 plus $ 11,200 interest. Further, pursuant to the trial court's decree as modified by the court of appeals, petitioner paid alimony and child support payments to his former wife. On his 1979 return, petitioner deducted $ 6,550 as alimony paid. During 1982, petitioner filed an amended return for 1979, requesting a refund equal to $ 2,083 for an additional $ 10,000 in alimony paid. On their 1981 and 1982 returns, petitioners deducted $ 32,800 and $ 19,800, respectively, as alimony paid. Respondent disallowed $ 25,000 [3] and $ 15,000 for 1981 and 1982, respectively, determining that these amounts constituted nondeductible property settlement payments. *319 Petitioner contends that the disallowed payments constitute deductible alimony. Therefore, he disagrees with respondent's disallowances as to 1981 and 1982 and requests that we determine an overpayment in the amount of $ 2,083 for 1979. Respondent contends that the amounts in question were not received "in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband." Respondent concedes that the payments were made pursuant to a divorce decree and that the payments were periodic, but takes the position that petitioner is attempting to deduct property settlement payments. If the payments constitute property settlement payments, then the amounts are not deductible to petitioner and not includible in former wife's income. Yoakum v. Commissioner,82 T.C. 128, 134 (1984). Property settlement payments are capital in nature. Consequently, property settlement payments are not subject to section 71. Yoakum v. Commissioner, supra at 134, citing Thompson v. Commissioner,50 T.C. 522 (1968) and Price v. Commissioner,49 T.C. 676 (1968). On the other *320 hand, section 215 [4] allowed the husband to deduct payments includible in the wife's income under section 71. Section 71 [5] provided that the wife must include in her income periodic payments discharging "a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree." *321 Thus, we must determine whether the payments discharged petitioner's legal obligation of support or whether the payments constituted a property settlement dividing the marital assets. It is well settled that labels assigned to the payments by the parties in their agreement or by the court in the divorce decree are not conclusive. Rather, the determination rests upon all of the surrounding facts and circumstances. Yoakum v. Commissioner, supra at 140; Beard v. Commissioner,77 T.C. 1275, 1283-1284 (1981) and cases cited therein; Gammill v. Commissioner,73 T.C. 921, 926-927 (1980), affd. 710 F.2d 607 (10th Cir. 1982); Widmer v. Commissioner,75 T.C. 405, 409 (1980); Mirsky v. Commissioner,56 T.C. 664, 675 (1971), and cases cited therein. Thus, we independently determine the substance of the payments. In Beard v. Commissioner, supra at 1284-1285 we delineated factors which indicate that payments are more like a property settlement than a support allowance as follows: (1) That the parties in their agreement (or the court in its decree) intended the payments to *322 effect a division of their assets, Porter v. Commissioner,388 F.2d 670, 671 (6th Cir. 1968), affg. per curiam a Memorandum Opinion of this Court; Wright v. Commissioner, supra; (2) that the recipient surrendered valuable property rights in exchange for the payments, Mann v. Commissioner,74 T.C. 1249, 1259-1262 (1980); Gammill v. Commissioner,73 T.C. 921, 928-929 (1980), on appeal (10th Cir. June 3, 1980); Warnack v. Commissioner, supra at 550-551; (3) that the payments are fixed in amount and not subject to contingencies, such as the death or remarriage of the recipient, Widmer v. Commissioner,75 T.C. 405, 409 (1980), on appeal (7th Cir., June 26, 1981); McCombs v. Commissioner,397 F.2d 4, 7 (10th Cir. 1968), affg. a Memorandum Opinion of this Court; Land v. Commissioner,61 T.C. 675, 683 (1974); (4) that the payments are secured, Widmer v. Commissioner, supra;Gammill v. Commissioner, supra at 929; (5) that the amount of the payments plus the other property awarded to the recipient equals approximately one-half of the property accumulated *323 by the parties during marriage, Lambros v. Commissioner,459 F.2d 69, 71-72 (6th Cir. 1972), affg. a Memorandum Opinion of this Court; Schottenstein v. Commissioner,75 T.C. 451, 464 (1980); (6) that the need of the recipient was not taken into consideration in determining the amount of the payments, McCombs v. Commissioner, supra; and (7) that a separate provision for support was provided elsewhere in the decree or agreement. Schottenstein v. Commissioner, supra at 457. Conversely, the absence of one or more of the above factors may tend to indicate that the payments are more in the nature of a support allowance. We begin our analysis with an examination of the state statutory and judicial authority governing the division of property in Iowa because state law defines property rights. We note that while state law defines property rights, Federal law determines the tax consequences which attend these defined rights. Sampson v. Commissioner,81 T.C. 614, 618 (1983), affd. without published opinion 829 F.2d 39 (6th Cir. 1987), cert. denied U.S. (1988). The pertinent Iowa statutory *324 provision in effect during the years in issue (Iowa Code Ann. tit. 28, sec. 598.17 (West 1979)) provided: The Court shall, based upon competent and relevant evidence, in such decree provide for the division of the assets of the parties and reasonable support or maintenance of any dependent children or either spouse. [6]
During the years in issue, judicial guidelines, rather than statutory guidelines, governed the appropriate divisions of the parties' assets and the awards of alimony or support. Locke v. Locke,246 N.W. 2d 246, 251 (Iowa 1976), citing Schantz v. Schantz,163 N.W. 2d 398, 405 (Iowa 1968). In Schantz, supra at 405, the Iowa Supreme Court delineated premarital and postmarital factors helpful in effecting property divisions. Premarital factors constituted (1) the social position and living standards of each party, (2) their respective ages, (3) their respective mental or physical condition, *325 (4) what each sacrificed or contributed, financially or otherwise to the marriage, and (5) the training, education and abilities of each party. Some of the postmarital factors constituted (1) the duration of the marriage, (2) the number of children, their respective ages, physical or mental conditions, and relative parental as opposed to financial needs, (3) net worth of property acquired, contributions of each party thereto by labor or otherwise, net worth and present income of each party, (4) conduct of the spouses, (5) present physical and mental health of each party, (6) earning capacity of each party, (7) life expectancy of each party, (8) any extraordinary sacrifice, devotion or care by either spouse in furtherance of a happy marriage or in preservation of the marital relationship, (9) present standards of living and ability of one party to pay balanced against relative needs of the other, and (10) any other relevant factors which aid in reaching a fair and equitable determination as to respective rights and obligations of the parties. Further, during the years in issue, the Iowa courts considered property inherited before or during the marriage when effecting a property division *326 of the parties' marital assets. In re Marriage of Moffatt,279 N.W. 2d 15, 20 (Iowa 1979), citing In re Marriage of Beeh,214 N.W. 2d 170, 175 (Iowa 1974) and cases cited therein; Locke v. Locke, supra at 252-253. The Eighth Circuit Court of Appeals, to which an appeal would lie, has held that the rights of a wife in Iowa constituted only inchoate rights in her husband's property. Wallace v. United States,439 F.2d 757, 760 (8th Cir. 1971), cert. denied 404 U.S. 831 (1971). Thus, a wife's interest in marital property in Iowa constituted only a burden on her husband's property rather than creating part ownership. Wallace v. United States, supra at 760. The Iowa courts did not apply either a standard percentage or equal division test. Instead, they utilized a reasonableness test to divide the marital assets: whether the division of the marital assets constituted an equitable and just award under the circumstances. Locke v. Locke, supra at 251. Petitioner argued that the payments were based upon his support obligation to his former wife. As we perceive petitioner's *327 main argument, he contends that his former wife had no property interest in his assets, the bulk of which were received through inheritance and gift. However, we do not so read the Iowa cases. Indeed, although arguing to the contrary, petitioner agrees that Iowa courts considered inherited property and gifts received before the marriage as a factor to be considered by the court in arriving at a division of marital assets. For the following reasons we find that petitioner's payments to Allison Lannom constituted property settlement payments. First, we accord heavy weight to the intent of the Iowa Court of Appeals as exemplified in the original divorce decree as modified. [7] The payments are not alimony because in de novo review, the Iowa Court of Appeals carefully considered the individual support needs of petitioner's former wife, including her desire to finish college. The Iowa Court of Appeals agreed with Allison Lannom that the trial court's support allowance was inadequate. Thus, the Iowa Court of Appeals doubled her support allowance award and increased the time period from 2 to 5 years. This support allowance modification upwards clearly indicates that the Iowa Court *328 of Appeals thoroughly examined Allison Lannom's support needs on the one hand and property division on the other hand. The Iowa Court of Appeals thoroughly examined the trial court's property division. Pursuant to de novo review, the Iowa Court of Appeals specifically mentioned the trial court's division of the parties' total assets and found this division inequitable. Consequently, the Iowa Court of Appeals increased the property division in favor of Allison Lannom. The Iowa Court of Appeals decision clearly shows that it examined two separate and distinct provisions: support allowance and property division. Although the Iowa Court of Appeals' decision indicates that the support allowance and the property division were separate and distinct, petitioner contends otherwise. Petitioner contends that the Iowa Court of Appeals increased the time of the property settlement payments from 10 to 12 years so that petitioner would meet the periodicity requirement of section 170(c). We find this contention wrong. *329 The payments were fixed in amount and not subject to contingencies. The payments were secured by a lien on petitioner's partnership interest in Lannom Brother's Partnership. In addition, we find that petitioner's former wife gave up valuable property rights in exchange for the payments. Another factor is whether the amounts of the payments plus other property awarded to the recipient equals approximately one-half of the property accumulated by the parties during the marriage. In this case, although petitioner and his former wife had net assets equal to $ 626,629, the payments plus the other assets awarded to petitioner's former wife equaled $ 210,929. This division of net assets equaled approximately 2/3 to petitioner and 1/3 to his former wife. We note that at the time of their divorce, Iowa courts considered property acquired before the marriage and by inheritance when dividing the parties' assets, not just property accumulated during the marriage. Thus, the Iowa Court of Appeals did not determine the value of the parties' net assets accumulated solely during the marriage. Further, petitioner did not present evidence as to the value of the property solely accumulated during *330 the marriage. Consequently, we find that absence of this factor does not indicate that the payments constituted a support allowance. Thus, after examining all of the facts and circumstances in this case, we find that the payments constituted property settlement payments, not alimony payments. Thus, we sustain respondent's disallowance. Since we find that these payments did not constitute deductible alimony payments, we need not examine respondent's full faith and credit argument. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. We granted respondent's motion to consolidate these cases for purposes of trial, briefing, and opinion.↩
2. Section references are to the Internal Revenue Code of 1954, as amended, and in effect for the tax years at issue unless otherwise indicated. Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Since the trial court's decree, as modified by the court of appeals, required that petitioner pay $ 15,000 per year, not $ 10,000, it appears that petitioner's "balloon payment" totaling $ 32,800 represented the additional $ 5,000 owed for 1979 and 1980. Thus, respondent disallowed an additional $ 10,000 in 1981 to account for this claimed "balloon payment" deduction.↩
4. Sec. 215 provided, in pertinent part, as follows: (a) GENERAL RULE. -- In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income. ↩
5. Sec. 71 provided, in pertinent part, as follows: (a) GENERAL RULE. -- (1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE. -- If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.↩
6. In 1980 the pertinent Iowa statutory provisions were amended. The amended provisions were not retroactive to the 1979 divorce decree in issue. In re Marriage of Hitchcock,309 N.W. 2d 432↩ (Iowa 1981).
7. The divorce decree became final after all appeals were satisfied. The original divorce decree constitutes the trial court's decree as modified by the court of appeals.↩